[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 6, 2012
JOHN LEY
CLERK

_____

No. 10-15639

_____

D.C. Docket No. 1:03-cv-01345-PWG

SOLUTIA INC,
PHARMACIA CORPORATION,

Plaintiffs - Counter -
Defendants - Appellants,

versus

MCWANE, INC.,
aka Union Foundry,
aka M&H Valve,
UNITED STATES PIPE AND FOUNDRY COMPANY, INC.,
MEADWESTVACO CORPORATION,
fka Mead Corporation,
fka Union Foundry,
fka Woodward Iron,
fka Alabama Pipe Company,
fka Lynchburg Foundry,
fka Standard Foundry,
fka Anniston Foundry,
FMC CORPORATION,

fka Kilby Steel,
UNITED DEFENSE, LP, et al.,

Defendants - Counter -
Claimants - Appellees,

HURON VALLEY STEEL CORPORATION,
TULL CHEMICAL COMPANY, INC.,
RANSOM INDUSTRIES,

Defendants - Appellees,

US CASTINGS, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 6, 2012)

Before MARTIN, HILL and EBEL,* Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Solutia, Inc. and Pharmacia Corporation (Solutia &

Pharmacia) appeal the District Court's grant of summary judgment against their

claims under § 107(a) of the Comprehensive Environmental Response,

---

* The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Compensation, and Liability Act (CERCLA).[1] Solutia & Pharmacia also appeal the District Court's denial of their Federal Rule of Civil Procedure 59(e) motion to clarify or amend the summary judgment order. The appeal requires this Court to decide, as a matter of first impression, whether parties subject to a consent decree may file claims for cost recovery under § 107(a) of CERCLA, or whether their remedies are limited to filing claims for contribution under § 113(f) of CERCLA.

## I. BACKGROUND

As the Magistrate Judge noted in his thorough ruling granting summary judgment, "[t]his case is complex, in terms of its underlying facts, its litigation history, and the legal issues it presents." Monsanto Company produced polychlorinated bipheyls (PCBs) at a plant near downtown Anniston, Alabama from 1929 to 1971.[2] Monsanto's operations caused and contributed to environmental contamination of the areas surrounding the Anniston plant. In 1997, Monsanto spun off Solutia, which now owns and operates the Anniston plant. In 2000, the merger of Monsanto and Pharmacia & Upjohn Inc. resulted in the creation of Pharmacia Corporation.

---

[1] Pub. L. No. 96-510, 94 Stat. 2767 (1980), amended by Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986).

[2] The EPA has determined that exposure to PCBs has numerous deleterious health consequences, and therefore regulates their manufacture and distribution. See 40 C.F.R. § 761.20.

In 2002, the United States Environmental Protection Agency (EPA) filed a cleanup enforcement action under CERCLA in the District Court for the Northern District of Alabama against Solutia & Pharmacia (the Enforcement Case). The EPA and Solutia & Pharmacia resolved the Enforcement Case in August 2003 by entering into a Partial Consent Decree (PCD), which imposed joint and several obligations on the companies to finance and perform specified cleanup operations. The PCD and its incorporated documents referenced two areas of contamination that are the subject of this appeal—the "Anniston PCB Site" and the "Anniston Lead Site." The PCD reserved the right of Solutia & Pharmacia to seek contribution from other potentially responsible parties (PRPs)[3] for cleanup costs associated with the Anniston Lead Site.[4]

Nearly two years after the District Court approved the PCD, the EPA

---

[3] "Potentially responsible party" (PRP) is a term used under CERCLA to connote a private party who might be liable for cleanup costs that stem from environmental contamination. See Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 161, 125 S. Ct. 577, 580 (2004).

[4] One of the documents incorporated into the PCD, the Non-time Critical Removal Agreement, specified:

> [R]esidential properties containing lead in excess of 400 ppm are also part of the Anniston Lead Site and [the] EPA is in the process of identifying potentially responsible parties (PRPs) under CERCLA. . . . If [Solutia & Pharmacia] remove soil from any property having lead in excess of 400 ppm . . . EPA acknowledges that [Solutia & Pharmacia] may seek contribution for the costs of such removal from the PRPs at the Anniston Lead Site and any other parties who may be liable.

4

entered into a separate CERCLA settlement agreement with the Foothills Community Partnership. The settlement required the Partnership to reimburse the EPA for its past and future costs in cleaning up lead contamination in the Anniston area. Almost all Defendants in the present appeal ("Settling Defendants"), with the exception of Southern Tool LLC and Scientific Atlanta ("Non-Settling Defendants"), were parties to this CERCLA settlement.

Solutia & Pharmacia believed that the EPA's settlement with the Partnership undermined their right, as delineated in the PCD, to seek contribution from other potentially responsible parties for cleanup costs relating to the Anniston Lead Site. Seeking to vindicate this position, they filed a motion in the Enforcement Case. The District Court agreed that the EPA had repudiated the PCD and indicated that, upon motion, he would suspend Solutia & Pharmacia's obligations under the consent order. However, Solutia & Pharmacia never took the District Court up on its offer, thus leaving the PCD in effect. Then, in July 2006 the EPA and Solutia & Pharmacia entered into a Stipulation Clarifying the Partial Consent Decree (Stipulation). In it, Solutia & Pharmacia agreed to clean up specified geographical areas around Anniston—Zones A, B, C, and D—including areas that involved lead contamination.

## II. PROCEDURAL HISTORY

In June 2003, Solutia & Pharmacia filed this action in the District Court for the Northern District of Alabama against the Defendants-Appellees as potentially responsible parties under CERCLA. In Count I of their Amended Complaint, Solutia & Pharmacia asserted claims for contribution under § 113(f) of CERCLA (codified as 42 U.S.C. § 9613(f)) for cleanup costs incurred at the Anniston Lead Site and Anniston PCB Site. In Count II, Solutia & Pharmacia asserted claims for recovery under § 107(a) of CERCLA (codified as 42 U.S.C. § 9607(a)) for cleanup costs incurred at the Anniston Lead Site only.

The Settling Defendants moved for summary judgment on the § 107(a) recovery and § 113(f) contribution claims. Southern Tool and Scientific Atlanta, the Non-Settling Defendants, moved for summary judgment only on the § 107(a) recovery claims. In June 2008, the Magistrate Judge granted Settling Defendants summary judgment on Count I—the § 113(f) contribution claims—because the claims were precluded under § 113(f)(2), which provides, "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). As to Count II, the Judge ruled that Solutia & Pharmacia were entitled to proceed

against all Defendants on claims seeking cost recovery under § 107(a) with regard to the Anniston Lead Site.

However, after the Defendants filed motions to reconsider in December 2009, the Magistrate Judge vacated his prior order and entered summary judgment against Solutia & Pharmacia on their § 107(a) claims in July 2010. The Judge based his July 2010 order on cases decided in the wake of United States v. Atlantic Research Corp., 551 U.S. 128, 137 S. Ct. 2331 (2007), as well as the July 2006 Stipulation between the EPA and Solutia & Pharmacia, which had not been presented to the Court at the time of its June 2008 order. The Judge ruled that because the PCD and the Stipulation granted Solutia & Pharmacia contribution rights under § 113(f) for certain costs, they could not choose to bring their claims under § 107(a) for those same costs.

Solutia & Pharmacia filed a Rule 59(e) motion to clarify or amend the July 2010 order, requesting that the Magistrate Judge reinstate their § 107(a) claims for response costs that they had incurred prior to entry of the Partial Consent Decree. The Judge denied the motion, because Solutia & Pharmacia relied on arguments in their Rule 59(e) motion that they had not previously raised.

### III. SOLUTIA & PHARMACIA'S § 107(a) CLAIMS

Solutia & Pharmacia argue that the Magistrate Judge erred, because the

7

plain language of CERCLA allows them to recover cleanup costs that they directly incurred, even if those costs are the subject of a consent decree between them and the EPA.

Whether § 107(a) of CERCLA grants parties a right to recover cleanup costs that they directly incur in complying with a consent decree is a matter of statutory interpretation subject to de novo review. United States v. Murrell, 368 F.3d 1283, 1285 (11th Cir. 2004).

At the center of this dispute are two CERCLA provisions—§ 107(a) and § 113(f) (codified as 42 U.S.C. §§ 9607(a), 9613(f)). The United States Supreme Court has explained in two recent decisions that each provision grants private parties a distinct right of action for recouping environmental cleanup costs. Cleanup costs incurred voluntarily and directly by a party are recoverable only under § 107(a)(4)(B), even if the claimant is not entirely innocent under CERCLA. Atl. Research, 551 U.S. at 139, 137 S. Ct. at 2338. Further, § 107(a) imposes joint and several liability on CERCLA defendants. Id. at 140 n.7, 127 S. Ct. at 2339 n.7.

By contrast, if a person is forced to reimburse a third party for its cleanup efforts, as mandated by a legal judgment or settlement under CERCLA, then that person may only seek contribution for those reimbursement costs from other

potentially liable parties under § 113(f). <u>Cooper Indus., Inc. v. Aviall, Inc.</u>, 543 U.S. 157, 166, 125 S. Ct. 577, 583 (2004). Further, where § 107(a) imposes joint and several liability, § 113(f)'s right of contribution is premised upon the common law concept that the tortfeasor-plaintiff "paid more than his or her proportionate share," such that allocation according to fault between the § 113(f) plaintiff and defendant is appropriate. <u>Atl. Research</u>, 551 U.S. at 138, 127 S. Ct. at 2338.

Section 113 of CERCLA contains additional provisions that define the scope of available remedies under § 107(a) and § 113(f). First, under § 113(f)(2), if a party has settled its liability to the United States or a state government, it cannot later be held liable to another claimant for contribution under § 113(f). <u>See</u> 42 U.S.C. § 9613(f)(2). Second, § 113(g) of CERCLA provides for different statutes of limitations, depending on whether the claim originates under § 107(a) or § 113(f). <u>See</u> 42 U.S.C. § 9613(g)(2)–(3).

In <u>Atlantic Research</u>, the Supreme Court expressly declined to decide the issue presented here—whether a party who incurs direct cleanup costs pursuant to a consent decree following a CERCLA lawsuit under § 106 or § 107 may bring an action to recover those costs under § 107(a). 551 U.S. at 139 n.6, 127 S. Ct. at

9

2338 n.6.[5]  However, we are not drawing on a completely blank slate.  Since

Atlantic Research was decided, other circuits have held that § 113(f) provides the

"exclusive remedy for a liable party compelled to incur response costs pursuant to

an administrative or judicially approved settlement under §§ 106 or 107,"

including a consent decree.  Morrison Enter., LLC v. Dravo Corp., 638 F.3d 594,

603 (8th Cir. 2011); accord Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602

F.3d 204, 229 (3d Cir. 2010) (holding that parties subject to a consent decree

cannot bring a claim under § 107(a)); Niagra Mohawk Power Corp. v. Chevron

U.S.A., Inc., 596 F.3d 112, 128 (2d Cir. 2010) (holding that parties that settle

CERCLA liability with government agencies can only bring § 113(f) contribution

claims).

In addition, this is not the first time that the Eleventh Circuit has

encountered consent decrees in the context of CERCLA.  In fact, this Court has

held that a consent decree gives a party a right to contribution under § 113(f) in

Atlanta Gas Light Co. v. UGI Utilities, Inc., 463 F.3d 1201, 1203–04 (11th Cir.

2006).  In accordance with our precedent, we conclude that Solutia & Pharmacia

---

[5]  The Supreme Court identified the problem that arises in this situation as it relates to the party who "does not incur costs voluntarily [as required under § 107(a)] but does not reimburse the costs of another party [as required under § 113(f)]."  Atl. Research, 551 U.S. at 139 n.6, 127 S. Ct. at 2338 n.6

10

are entitled to a contribution claim under § 113(f) of CERCLA. Now we must decide whether a party who has a claim under § 113(f) for cleanup costs may also have a claim under § 107(a) for those same costs.

Solutia & Pharmacia argue that there is no language in either § 107 or § 113 to suggest that § 107(a) and § 113(f) are mutually exclusive remedies.[6] Be that as it may, CERCLA must "be read as a whole," Atl. Research, 551 U.S. at 135, 127 S. Ct. at 2336 (quotation marks omitted), such that its remedies remain "clearly distinct." Id. at 138, 127 S. Ct. at 2337 (quotation marks omitted). If a party subject to a consent decree could simply repackage its § 113(f) claim for contribution as one for recovery under § 107(a), then the structure of CERCLA remedies would be completely undermined. For example, parties could circumvent the different statutes of limitations that attach to § 113(f) contribution claims and § 107(a) recovery claims. See 42 U.S.C. § 9613(g)(2)–(3). Further,

---

[6] Solutia & Pharmacia also argue that we must defer to EPA regulation, 40 C.F.R. § 300.700(c)(3)(ii). Section 107(a) only permits recovery claims for cleanup costs that are "consistent with the national contingency plan [NCP]." 42 U.S.C. § 9607(a)(4)(B). The EPA regulation explains that, for purposes of § 107(a) recovery actions, "[a]ny response action carried out in compliance with the terms of an order issued by EPA . . . or a consent decree . . . will be considered 'consistent with the NCP.'" 40 C.F.R. § 300.700(c)(3)(ii). However, Solutia & Pharmacia overstate the import of the regulation. Defining certain response actions as consistent with a national contingency plan does not automatically authorize parties to bring claims under § 107(a) if those claims otherwise fall under § 113(f). Instead, the regulation may simply recognize that a party, who is *not* subject to a consent decree, may bring a § 107(a) claim, if such an action would be consistent with an existing consent decree between the EPA and a third party. Thus, the regulation retains its meaning, even if it does not authorize parties subject to consent decrees to bring claims under § 107(a).

11

parties, like Solutia & Pharmacia, could thwart the contribution protection afforded to parties that settle their liability with the EPA, like the Settling Defendants. See 42 U.S.C. § 9613(f)(2). This, in turn, would destroy CERCLA's statutorily-created settlement incentive. Finally, to allow a § 107(a) claim here would allow parties, like Solutia & Pharmacia, to impose joint and several liability on Defendants, and other similarly situated parties. Defendants would then be barred from asserting any § 113(f) counterclaims, because Solutia & Pharmacia have already entered into a judicially approved settlement with the EPA.[7] See 42 U.S.C. § 9613(f)(2); Agere Sys., 602 F.3d at 228.

For these reasons, we agree with our sister circuits that we must deny the availability of a § 107(a) remedy under these circumstances in order to "[t]o ensure the continued vitality of the precise and limited right to contribution." Morrison Enter., 638 F.3d at 603; accord Niagara Mohawk Power, 596 F.3d at 128 ("[P]roceed[ing] under § 107(a) would . . . abrogate the requirements Congress placed on contribution claims under § 113.").

---

[7] Solutia & Pharmacia argue that courts could use their "inherent equitable powers to apportion liability" under a § 107(a) claim. While this suggestion would cure the inequitable outcome described above, it would also require this Court to challenge the Supreme Court's assumption in Atlantic Research that § 107(a) provides for joint and several liability. 551 U.S. at 140 n.7, 227 S. Ct. at 2338 n.7. Although Solutia & Pharmacia have cautioned this Court against "rewriting the statute," their suggestion would require substantial reworking of CERCLA's remedial scheme.

## IV.  SCOPE OF PARTIAL CONSENT DECREE

Solutia & Pharmacia argue that, even if this Court finds § 113(f) to be their exclusive remedy, they do not have a § 113(f) contribution action for the Anniston Lead Site, because they were not obligated to clean the Site under the Partial Consent Decree (PCD).  Therefore, they claim entitlement to bring § 107(a) claims for cleanup costs related to the Anniston Lead Site.

We review the scope and meaning of a consent decree <u>de novo</u>.  <u>Reynolds v. Roberts</u>, 202 F.3d 1303, 1312 (11th Cir. 2000).

The PCD incorporates a number of documents and schedules to clarify its purpose and scope.  This includes "all work and other plans . . . set forth herein or developed by [Solutia & Pharmacia] and approved by EPA pursuant to this Consent Decree."  According to this clause, future plans developed pursuant to the PCD, such as the July 2006 Stipulation, should be considered as much a part of the PCD as the documents in existence at the time it was drafted.  Therefore, it makes most sense to examine the July 2006 Stipulation, because it clarifies the scope of Solutia & Pharmacia's obligations under the Partial Consent Decree.

Solutia & Pharmacia have argued that the Stipulation is not admissible into

13

evidence.[8]  However, Solutia & Pharmacia did not contest the admissibility of the Stipulation in their opening brief on appeal, even though the Magistrate Judge relied extensively on the Stipulation in his order.  Therefore, they have abandoned this argument.  Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 972 (11th Cir. 2008).[9]

The Stipulation classifies Solutia & Pharmacia's remedial obligations by geographic area—Zones A, B, C, and D.  In Zone A, and certain properties in Zone B that have already been sampled for contamination, the companies agreed to clean yards with a soil "PCB concentration greater than or equal to 1ppm and no surface lead concentration greater than or equal to 400pm."  In those Zone B properties that had yet to be sampled, the companies agreed to clean yards with "soil PCB concentrations greater than or equal to 1ppm . . . . regardless of the level of lead found in that yard."  In Zone C, Solutia & Pharmacia similarly agreed to remedy yards "containing surface soil PCB concentrations greater than or equal to 1ppm, regardless of the levels of lead found in such yards."  And in Zone D, the

_____

[8]  Solutia & Pharmacia argue that the terms of the Stipulation provide that "it shall not be considered an admission of liability and is not admissible in evidence against the Defendants in any judicial or administrative proceeding other than a proceeding by the United States."

[9]  Further, the Magistrate Judge's decision to consider the Stipulation was not an abuse of discretion.  As the Judge noted, the Stipulation is an agreement between the EPA and Solutia & Pharmacia.  Solutia & Pharmacia did not argue that "the defendants, who are not parties to the Stipulation, are precluded from now relying upon it."

companies agreed to remedy yards with "PCB concentrations greater than or equal to 1ppm and/or surface soil lead concentrations greater than or equal to 400ppm."

The Stipulation thus demonstrates that Solutia & Pharmacia were obligated to clean areas in which PCBs were commingled with other hazardous substances, namely, lead. Beyond that, these obligations were defined according to geographic areas, not according to the source of the contamination, thereby undermining Solutia & Pharmacia's argument to the contrary.[10] Even if we were to accept Solutia & Pharmacia's other arguments concerning the scope of the Partial Consent Decree and Stipulation,[11] it would not change the fact that Solutia & Pharmacia were compelled to clean the properties specified in the Stipulation, and therefore, have exclusive § 113(f) claims as to those costs.

## V. RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT

In their Rule 59(e) motion under the Federal Rules of Civil Procedure,

---

[10] Solutia & Pharmacia argue that the Partial Consent Decree did "not rest on any particular geographic area or any particular contaminant [but] on the sources of the contaminants in each site." As such, they claim a right to bring a § 107(a) claim for costs "incurred cleaning up wastes attributable to the defendants."

[11] For example, Solutia & Pharmacia argue that, in the Stipulation, the parties expressly reserved the question of Solutia & Pharmacia's responsibility to clean the Anniston Lead Site. This does not alter the fact that Solutia & Pharmacia were obligated to clean the geographic zones specified in the Stipulation. Further, the Stipulation specified that any future liability for the Anniston Lead Site would be "in addition to Solutia & Pharmacia's agreement to perform lead cleanup in Zones B, C, and D." Thus, the reservation of the Anniston Lead Site issue did not affect Solutia & Pharmacia's obligations under the Stipulation.

Solutia & Pharmacia asked the Magistrate Judge to overturn summary judgment as it related to $14 million in cleanup costs for areas allegedly not covered by the Partial Consent Decree. The Magistrate Judge denied the motion for failure to raise the argument before entry of summary judgment. According to Solutia & Pharmacia, "[t]his was error, because defendants never argued that they were entitled to summary judgment with respect to [those] areas" not covered by the PCD.

This Court reviews the denial of a motion to alter or amend judgment under Rule 59(e) for abuse of discretion. Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1341 (11th Cir. 2007).[12]

In each of their December 2009 motions for reconsideration of summary judgment, Defendants either requested that the Magistrate Judge dismiss all of Solutia & Pharmacia's § 107(a) claims, or that the Judge limit all of Solutia & Pharmacia's claims to § 113(f).[13] Solutia & Pharmacia argued in their answer that

---

[12] Solutia & Pharmacia cite a Sixth Circuit case for the proposition that this Court should review de novo a Rule 59(e) motion to reconsider grant of summary judgment. Nat'l Leadburners Health & Welfare Fund v. O.G. Kelley & Co., Inc., 129 F.3d 372, 374 (6th Cir. 1997). This argument is apparently unsupported by Eleventh Circuit precedent, and the Sixth Circuit case is not binding. Therefore, the standard of review remains abuse of discretion.

[13] Solutia & Pharmacia argue that Defendants' motions for reconsideration argued for dismissal of any § 107(a) claims for which Solutia & Pharmacia had incurred *compelled* costs. Therefore, Solutia & Pharmacia should still be entitled to bring their claims for any *voluntarily* incurred costs. We reject this argument. While Defendants' legal arguments might have

16

§ 113(f) was not their exclusive statutory remedy. They further argued that the PCD did not compel them to clean up the Anniston Lead Site and that any costs incurred in cleaning up that site were voluntary. However, Solutia & Pharmacia limited their arguments to the content of the Partial Consent Decree, and the definition of the Anniston Lead Site contained therein. They never actually argued prior to the grant of summary judgment, as they do now, that they "voluntarily incurred costs <u>unrelated</u> to the Consent Decree." Nor did Solutia & Pharmacia cite the properties by name that they now urge should be exempt from summary judgment.[14]

As the Magistrate Judge correctly noted, "[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 598 (11th Cir. 1995). With this principle in mind, the

---

discussed compelled costs, Defendants clearly moved for dismissal of all of Solutia & Pharmacia's § 107(a) claims, whether they related to compelled or voluntary cleanup costs.

[14] Solutia & Pharmacia seek $4 million for recovery expenditures in the Choccolocco Creek Conservation Corridor, and $10 million in expenditures at Quintard Mall, Oxford Lake Park, the Choccolocco Creek Waste Water Treatment Plant, and certain Alabama Department of Transportation Bridges.

Magistrate Judge did not abuse his discretion by denying Solutia & Pharmacia's Rule 59(e) motion to alter or amend the summary judgment order.

## VI.  CONCLUSION

For the reasons stated above, we AFFIRM the grant of summary judgment.