[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14377
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-00164-JRH-WLB

ELMA SANDERS,
as Surviving Spouse and as
Executrix of the Estate of William
Hoyt Sanders, Deceased,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(January 11, 2013)

Before BARKETT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Elma Sanders appeals from an adverse summary judgment in favor of the United States of America on her wrongful death claim alleging that her husband's, William Hoyt Sanders's, fall in which he suffered serious injuries that led to his death while he was a patient at a Veterans Administration ("VA") medical facility was caused by the negligence of the VA's employees. On appeal, Ms. Sanders argues that the district court erred in concluding that there was no genuine dispute as to any material fact regarding the proximate cause of Mr. Sanders's fall.[1]

Mr. Sanders was admitted to the emergency room at a VA hospital in Augusta, Georgia to receive treatment for dehydration, delirium, and severe

---

[1] The district court entered two summary judgment orders in this case. In the first order, the district court granted summary judgment to the United States on Ms. Sanders's professional negligence claim, which ruling Ms. Sanders does not appeal, but denied summary judgment on the ordinary negligence claim. The United States moved to file a second summary judgment motion on the ordinary negligence claim, which the district court allowed and granted in favor of the United States. Ms. Sanders appeals from the grant of the second summary judgment.

In addition to the merits of the summary judgment, Ms. Sanders argues that the district court abused its discretion in allowing the United States to file a second motion for summary judgment, without any finding of good cause. Although Federal Rule of Civil Procedure 56 is silent as to whether a party can file a second motion for summary judgment, Federal Rule of Civil Procedure 59(e) permits parties to file a motion to alter or amend a judgment within twenty-eight (28) days, which rule has been invoked by parties seeking to amend a summary judgment ruling and is reviewed for abuse of discretion. See e.g., Solutia, Inc. v. McWane, Inc., 672 F.3d 1230, 1238–39 (11th Cir. 2012). Although the United States labeled its motion as one seeking to file a second summary judgment motion, in essence it was a Rule 59(e) motion to amend its original summary judgment order. The United States did not raise any new grounds for summary judgment but merely argued that the district court misapplied the proximate cause analysis in its first summary judgment order as it pertained to Ms. Sanders's claim that the ordinary negligence of Mr. Sanders's nursing assistant in failing to timely conduct her rounds caused his fall. We cannot say that the district court abused its discretion in granting the United States' motion.

depression.  At the time of his admission, he was bedridden and could not ambulate on his own, and so was classified as "high falls risk."  After showing some signs of improvement, he was later transferred to a different VA facility and assigned to the psychiatric unit with the intention of eventually undergoing electroconvulsive therapy to treat his depression.  He was evaluated by doctors and nurses, who noted that although Mr. Sanders was a little unsteady, he was able to stand and get in his wheelchair with minimal assistance.  The nursing assistants were assigned to help Mr. Sanders get out of bed, use the restroom, shower, shave and dress.  They also assisted him into his wheelchair and would wheel him to the dining room.

On the day of his fall, the night duty nursing assistant helped Mr. Sanders with his morning routine and wheeled him to the dining room, where he was to be supervised by the day shift.  After breakfast, a staff member at the nursing station observed Mr. Sanders walking back to his room alone by pushing his own wheelchair.  The next person to see Mr. Sanders was the day shift nursing assistant, Benita Glenn, who while conducting her early morning rounds, found him on the floor in his room between his bed and wheelchair and bleeding from his left ear. She immediately called for assistance and, due to his severe head injuries, Mr. Sanders was transferred back to the other VA facility for emergency treatment, where he died several days later.

3

Ms. Sanders argues that her husband's fall and subsequent death was proximately caused by Ms. Glenn's negligence in not conducting her morning rounds in a timely fashion.[2]  She argues that Ms. Glenn was supposed to begin her rounds at 8:00 a.m. and should have been attending to Mr. Sanders no later than 8:30, but did not arrive at his room until 9:30 a.m.[3]

We agree with the district court that Ms. Sanders has not presented any evidence that supports her claim that Ms. Glenn's lack of timeliness in conducting her rounds caused Mr. Sanders's fall.  At most it could be argued that Ms. Glenn should have found Mr. Sanders sooner, but the alleged untimeliness of discovering him is not evidence of causation regarding the fall.  There is no evidence to establish the time of Mr. Sanders's fall more precisely than that it probably occurred sometime between 7:30 a.m. and 9:00-9:30 a.m. thus, even had Ms. Glenn arrived in a timely fashion, Ms. Sanders has not presented any evidence to show how her timely arrival would have prevented a prior fall.  Essentially,

---

[2] For purposes of its summary judgment ruling the district court assumed that Ms. Glenn had a duty to conduct her rounds every thirty minutes and that she breached that duty by being between an hour and an hour and fifteen minutes late in checking on Mr. Sanders.  Thus, the only issue on summary judgment was whether Ms. Glenn's breach of her duty in conducting her rounds was the proximate cause of Mr. Sanders's fall.

[3] Although we agree with the district court that there is a genuine dispute regarding the time Ms. Glenn discovered Mr. Sanders on the floor in his room, the evidence ranging anywhere from 8:45 to 9:00 to 9:15 to 9:30, we also agree with the district court that this disputed fact is not material to the proximate cause of Mr. Sanders's fall.  At most it creates a genuine dispute regarding whether Ms. Glenn breached her duty to conduct timely rounds, but because the district court assumed that Ms. Glenn breached her duty by not arriving until 9:30 a.m. (the time Ms. Sanders argues Ms. Glenn arrived), the time of the arrival is not material.

because Ms. Glenn was not required to provide constant one-to-one supervision of Mr. Sanders and because the time when Mr. Sanders fell cannot be narrowed to less than a two hour time frame, the lack of evidence about why the timeliness of Ms. Glenn's rounds would have prevented Mr. Sanders's fall precludes a finding that her late arrival was the proximate cause of his fall under the circumstances of this case.

AFFIRMED.