**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WHITTAKER CORPORATION, a
Delaware corporation,
             *Plaintiff-Appellant*,

                 v.

UNITED STATES OF AMERICA,
             *Defendant-Appellee.*

No. 14-55385

D.C. No.
2:13-cv-01741-FMO-JC

OPINION

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted March 10, 2016
Pasadena, California

Filed June 13, 2016

Before: Stephen Reinhardt, Mary H. Murguia,
and John B. Owens, Circuit Judges.

Opinion by Judge Murguia;
Partial Concurrence by Judge Owens

## SUMMARY[*]

### CERCLA

The panel reversed the district court's dismissal of Whittaker Corporation's lawsuit against the United States under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 to recover expenses that Whittaker incurred since the 1980s from investigating and cleaning the Bermite Site, a munitions facility in Santa Clarita, California.

The district court dismissed the case based on its conclusion that because Whittaker had been sued in *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1069 (C.D. Cal. 2003), it could bring only a CERCLA contribution action – not a cost recovery action – against the United States, and the statute of limitations for a contribution claim had expired.

Whittaker was found liable to the *Castaic Lake* plaintiffs for the expenses specifically related to removing perchlorate from the plaintiffs' wells and replacing water; in this case, Whittaker sought reimbursement from the government for a different set of expenses for which Whittaker was found not liable in *Castaic Lake*.

The panel held that because Whittaker sought to recover expenses that were separate from those for which Whittaker's liability was established or pending, Whittaker was not

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

required to bring this suit as a claim for CERCLA § 113(f) contribution. The panel concluded that Whittaker was not barred on this basis from bringing a CERCLA § 107(a) cost recovery action against the United States.

Judge Owens concurred in all but Part III D because in his view the case law has drifted from Congress's intent when it passed and amended CERCLA in the 1980s.

## COUNSEL

Kevin M. Fong (argued), Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; Reynold L. Siemens, Mark E. Elliott, and Caroline L. Plant, Pillsbury Winthrop Shaw Pittman LLP, Los Angeles, California, for Plaintiff-Appellant.

Nicholas A. DiMascio (argued), Attorney, Environment and Natural Resources Division, United States Department of Justice, Denver, Colorado; Aaron P. Avila and Michael C. Augustini, Attorneys; Sam Hirsch, Acting Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

## OPINION

MURGUIA, Circuit Judge:

When two or more people have been found liable for someone's injury, and one of them pays more than her fair share, the law often lets the person who paid too much recover from the others, in order to even things out. This is called the right to "contribution," and it has deep roots in our statutory and common law. *See Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 86–88 (1981). CERCLA, a federal environmental statute, also allows people who pay to clean up pollution recover their costs from the polluters.[1] *See* 42 U.S.C. § 9607(a). The plaintiff in this case, Whittaker, is a company that was both found liable for injuries caused by its pollution and that also paid to clean pollution up. Whittaker now seeks reimbursement of its cleanup expenses from other polluters. We must decide whether Whittaker is limited to seeking contribution from other polluters, or whether Whittaker may instead recover its cleanup expenses in a CERCLA cost recovery action. We hold that Whittaker's liability in a prior case did not limit it to seeking contribution for all of its expenses, so Whittaker may use a CERCLA cost recovery action to seek reimbursement for the cleanup costs at issue in this case.

---

[1] "CERCLA" stands for the "Comprehensive Environmental Response, Compensation, and Liability Act of 1980." *See generally* 42 U.S.C. §§ 9601–75.

I

Whittaker Corporation is a defense contractor that manufactures and tests munitions for the U.S. military.[2]  In 1967, Whittaker acquired a munitions facility in Santa Clarita, California, from the Bermite Powder Company (the Bermite Site).  Between 1954, when the Bermite Powder Company was in charge, until 1987, when Whittaker ceased operations, approximately 90 percent of the munitions manufacturing and testing at the Bermite Site was done under contracts with the U.S. military.

Whittaker began investigating the release of hazardous substances at the Bermite Site in the early 1980s.  In 2000, Whittaker was sued by the Castaic Lake Water Agency and other water providers (the *Castaic Lake* plaintiffs) under CERCLA and various state laws.  The *Castaic Lake* plaintiffs were in the business of pumping water out of ground wells near the Bermite Site.  They alleged that their water supplies were contaminated by a pollutant called perchlorate and other hazardous chemicals as a result of Whittaker's operations.  Specifically, the *Castaic Lake* plaintiffs alleged:

> Plaintiffs, and each of them, are injured by the contamination (including, without limitation, the perchlorate contamination) caused by Defendants on a continuing basis.  In addition, Plaintiffs, and each of them, have incurred

---

[2] Because we are reviewing the district court's decision on a motion to dismiss, we take the factual allegations in the complaint as true and construe them in the light most favorable to Whittaker.  *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

and will continue to incur costs in responding to the contamination (including, without limitation, the perchlorate contamination) caused by Defendants' activities at the Site. Until the contamination problems caused by the Site are stopped, Plaintiffs will continue to incur substantial costs for the indefinite future.

In their CERCLA causes of action, the *Castaic Lake* plaintiffs sought to recover the "costs of response" they had incurred. The *Castaic Lake* plaintiffs also alleged causes of action for negligence, nuisance, trespass, and ultra-hazardous activity, and in those causes of action, they sought an injunction ordering Whittaker to "remediate and abate all contamination and threats of contamination caused by the Site."

The district court in *Castaic Lake* granted summary judgment to the *Castaic Lake* plaintiffs on their CERCLA claim based on perchlorate contamination in the plaintiffs' wells. *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1069 (C.D. Cal. 2003). Whittaker and its insurers subsequently settled with the *Castaic Lake* plaintiffs in 2007. Under the terms of the settlement, Whittaker and its insurers agreed to reimburse the *Castaic Lake* plaintiffs for costs the plaintiffs had incurred to remove perchlorate pollution from their water wells, and to purchase replacement water. The result of *Castaic Lake* was that Whittaker was found liable for a specific set of the plaintiffs' costs of responding to Whittaker's pollution; Whittaker was never ordered in *Castaic Lake* to clean up the Bermite Site.

In 2013, Whittaker initiated this CERCLA lawsuit against the United States to recover expenses Whittaker incurred

since the 1980s from investigating and cleaning the Bermite Site. Whittaker alleged that these expenses included costs for soil sampling, borings, excavations, surveys, groundwater sampling, and remedial operations addressing chlorinated solvents and heavy metals. Whittaker explicitly alleged that these expenses were separate from the costs for which it was liable under the *Castaic Lake* settlement.

The United States moved to dismiss Whittaker's complaint, arguing that because Whittaker had been sued in *Castaic Lake*, it could bring only a CERCLA contribution action—not a cost recovery action—against the United States, and that the statute of limitations for a contribution claim had expired. The district court agreed with the United States. The district court concluded that, pursuant to CERCLA § 113, the *Castaic Lake* lawsuit triggered Whittaker's right to bring an action for contribution (*i.e.*, reimbursement for paying more than its fair share), and that the instant lawsuit sought expenses that could have been reimbursed through such a contribution action. Because Whittaker could have brought a contribution action, the district court concluded under our case law that Whittaker could not bring a cost recovery action (*i.e.*, reimbursement from a polluter for cleanup costs). And because Whittaker only brought a cost recovery action, the district court dismissed the complaint.

Whittaker filed this timely appeal. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

## II

We review the district court's decision to grant a motion to dismiss *de novo*. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). We take

the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id.* "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Id.* We review the district court's interpretation of a statute *de novo*. *Id.*

### III

### A

Congress enacted CERCLA in 1980 to facilitate the remediation of hazardous waste sites and the resolution of liability for the related costs, especially through negotiated settlements. *Chubb Custom*, 710 F.3d at 956. One of the ways CERCLA achieves these goals is by allowing a party who remediates a hazardous waste site to obtain reimbursement of its expenses from those responsible for the pollution. *See id*. at 956–57.

As relevant to this case, CERCLA provides two mechanisms for private parties to recover their environmental cleanup expenses from other parties. First, CERCLA § 107(a) allows parties to bring "cost recovery" actions against polluters for a wide range of expenses, including "any . . . necessary costs of response incurred" and "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release [of a hazardous substance]." 42 U.S.C. § 9607(a)[3]; *United States*

---

[3] Adopting the convention of the litigants and other courts, the body of this opinion refers to CERCLA's Public Law sections, but citations are provided to the sections in Title 42 of the United States Code.

*v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007). In the lingo of CERCLA litigation, a polluter who might be liable under a § 107 cost recovery action is called a "potentially responsible party" or "PRP." *See Chubb Custom*, 710 F.3d at 956.

The other mechanism to recover cleanup expenses, § 113(f), allows a party to seek "contribution" in two circumstances. Section 113(f)(1) provides, in relevant part:

> Any person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)] of this title, during or following any civil action . . . under [§ 107(a)] of this title. . . . In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

42 U.S.C. § 9613(f)(1). And § 113(f)(3)(B) provides:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement . . . .

*Id.* § 9613(f)(3)(B). In short, § 113(f) generally allows a polluter to bring a contribution claim against other polluters if the polluter has been sued in a § 107 cost recovery action or settled with the government.

CERCLA does not define "contribution."  *See id.* § 9601. However, the Supreme Court provided a definition in *United States v. Atlantic Research*, another CERCLA case:

> Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." Nothing in [CERCLA] § 113(f) suggests that Congress used the term "contribution" in anything other than this traditional sense.

551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)).

The Supreme Court has made clear that "cost recovery" and "contribution" are "two 'clearly distinct' remedies." *Id.* (quoting *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 163 n.3 (2004)).  The Court explained the distinction as follows:

> [T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances.  Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under . . . § 107(a).  And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs.  Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f)

contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

*Id.* at 139 (internal quotation marks and citations omitted). A party uses contribution to get reimbursed for being made to pay more than its fair share to someone else, and uses cost recovery to get reimbursed for its own voluntary cleanup costs. *See id.* at 139 n.6.

However, problems with this distinction arise when a party is ordered to incur its own cleanup costs. Such a party is not reimbursing someone else, but neither are its own costs "voluntary." Because the procedural requirements and the remedies for cost recovery and contribution claims are distinct,[4] every federal court of appeals to have considered the question since *Atlantic Research*, including this Court, has said that a party who *may* bring a contribution action for certain expenses *must* use the contribution action, even if a cost recovery action would otherwise be available. *See, e.g.*, *Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924, 932 (9th

---

[4] Several courts have recognized that, given the choice, plaintiffs would generally prefer to proceed under a § 107 cost recovery action, rather than a § 113 contribution action, due to the § 107 cost recovery action's different statute of limitations, its provision for strict liability, its limited defenses, and its opportunity for joint and several recovery. *See, e.g.*, *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 690 (7th Cir. 2014); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236–37 (11th Cir. 2012).

Cir. 2008) ("A PRP cannot choose remedies, but must proceed under § 113(f)(1) for contribution if the party has paid to satisfy a settlement agreement or a court judgment pursuant to an action instituted under . . . § 107 [for cost recovery].").[5]

Under our precedent, if Whittaker could bring its claim in this case as a contribution action, it is required to do so. *See id.* The government argues, and the district court determined, that Whittaker's right to bring its claim in contribution was triggered by the *Castaic Lake* lawsuit, barring Whittaker from bringing this cost recovery action. It is clear that the *Castaic Lake* suit triggered Whittaker's ability to bring a contribution claim for at least the costs it was found liable for in that case.[6] *See id.* The determinative question here is whether Whittaker could, and therefore must, also bring a contribution action for costs for which it was not found liable in *Castaic Lake*, after the entry of judgment in that case.

---

[5] *See also NCR*, 768 F.3d at 690–92; *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 767 (6th Cir. 2014) ("CERCLA's text and structure lead us to conclude that PRPs must proceed under § 113(f) [for contribution] if they meet one of that section's statutory triggers."); *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2012); *Solutia*, 672 F.3d at 1237; *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011) (holding "that § 113(f) [contribution] provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under . . . [§] 107 [for cost recovery]"); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 124–28 (2d Cir. 2010) ("In our view, only § 113(f)(3)(B) [contribution] provides the proper procedural mechanism for [the plaintiff's] claims.").

[6] We do not here decide whether Whittaker's contribution claim based on its liability in *Castaic Lake* belongs solely to Whittaker's insurers.

B

CERCLA allows a party to bring a contribution claim in two circumstances: "during or following" being sued in a § 107 cost recovery action, and after the party "has resolved its liability to the United States or a State . . . in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(1), (3)(B). Although CERCLA sets forth these procedural triggers to bring a contribution claim, the statute does not actually define "contribution," as noted above. *See id.* § 9601. The government argues that, once one of the procedural triggers for a party's contribution claim has occurred, the party's right to contribution extends to all of the party's expenses at the site, regardless of whether those expenses were at issue in the triggering litigation or settlement. However, the government's argument mischaracterizes the contribution remedy.

Not all of a party's expenses related to remediating a site fall within the scope of contribution. In *Atlantic Research*, the Supreme Court explained that "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)." 551 U.S. at 139 n.6; *see also id.* at 138 (rejecting the government's argument that contribution is "synonymous with any apportionment of expenses among PRPs"). Although the Supreme Court has not explicitly held that a party's right to contribution in a CERCLA case is limited to the costs for which the party has been found liable, the Court's reasoning in *Atlantic Research* strongly supports that interpretation:

> Contribution is defined as the "tortfeasor's right to collect from others responsible for the

same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." . . . [A] PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties.

By contrast, § 107(a) permits recovery of cleanup costs but does not create a right to contribution. A private party may recover under § 107(a) without any establishment of liability to a third party.

. . .

Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under . . . § 107(a).

*Id.* at 138–39 (citation omitted). The Supreme Court's statement that the right to contribution is "contingent upon an inequitable distribution of liability" indicates that a party has a right to recover contribution only for those costs for which it has been found liable; other costs can be recovered in a § 107 cost recovery action "without any establishment of liability." *See id.* This is consistent with the traditional notion of contribution. *See* Restatement (Third) of Torts § 23(b) (2000) ("A person entitled to recover contribution may recover no more than the amount paid to the plaintiff in excess of the person's comparative share of responsibility.").

Following *Atlantic Research*, we have also explained that a private party must use a § 113(f) contribution action to recover expenses paid under a settlement agreement or a judgment. *Kotrous*, 523 F.3d at 932. "If, however, the private party has itself incurred response costs, it may seek recovery under [a cost recovery action pursuant to] § 107." *Id.*

The two other circuits to have considered the question have held that, even where one of the statutory triggers for a contribution claim has occurred for certain expenses at a site, a party may still bring a cost recovery action for its other expenses. In *Bernstein v. Bankert*, the Seventh Circuit confronted a case where some of a plaintiff's cleanup expenses at a site were incurred pursuant to a 1999 finalized settlement with the EPA, and other expenses were incurred pursuant to a 2002 consent decree that was not yet final. 733 F.3d 190, 202–03 (7th Cir. 2012). The plaintiff in *Bernstein*, the Third Site Trust Fund (the Trust), was established by a group of companies that were potentially responsible for pollution at a hazardous waste site. *Id.* at 196. For the expenses the Trust incurred under the finalized 1999 settlement, the Seventh Circuit held that the Trust was required to bring a contribution action, since the settlement "resolved its liability" and triggered § 113(f)(3)(B). *Id.* at 204–06. However, the Seventh Circuit also held that the non-final 2002 consent decree did not resolve the Trust's liability for those separate costs, and therefore the 2002 decree did not trigger a right to contribution. *Id.* at 207–08. The Seventh Circuit held that the Trust could bring a cost recovery action under § 107 for the expenses it incurred under the 2002 decree, because, "[t]o the extent that the Trustees' suit seeks to recover expenses arising out of their performance of the

2002 [consent decree], it is not a contribution action." *Id.* at 207.

In *NCR Corp. v. George A. Whiting Paper Co.*, the Seventh Circuit reaffirmed *Bernstein*'s approach of separately evaluating different sets of costs, but arrived at a slightly different outcome. 768 F.3d 682, 690–92 (7th Cir. 2014). In *NCR*, the plaintiff company, NCR, sought reimbursement for cleanup expenses it had incurred at a site under three separate orders from the EPA and the Wisconsin Department of Natural Resources issued in 2001, 2004, and 2007. *Id.* at 691. NCR argued it could bring a cost recovery action for these expenses, and that it was not limited to a contribution action. *Id.* Applying *Bernstein*, the Seventh Circuit held that each order triggered NCR's right of contribution for the expenses covered by that order. *Id.* at 691–92. NCR conceded that its expenses incurred under the 2001 order triggered its right to contribution. *Id.* at 691. The Seventh Circuit held that NCR's expenses incurred under the 2004 order were also required to be reimbursed through contribution, because that order "resolved NCR's liability" for those expenses, triggering § 113(f)(3)(B). *Id.* at 692. And finally, the Seventh Circuit held that NCR's expenses under the 2007 order were also required to be brought in contribution, because the government brought an action in 2010 to enforce that order, and a contribution action is available "during or following" an enforcement action. *Id.* at 691–92 (citing 42 U.S.C. § 9613(f)(1)). The Seventh Circuit rejected NCR's argument that the expenses it incurred under the 2007 order before the government's 2010 enforcement action were not covered by NCR's right of contribution: "Such slicing and dicing of costs incurred under the same administrative order makes little sense when a party's liability for all of those

costs will ultimately be determined in the enforcement action." *Id.* at 692.

In *Agere Systems, Inc. v. Advanced Environmental Technology Corp.*, the Third Circuit held that a party who had been sued in a § 107 cost recovery action could still bring its own cost recovery action for expenses separate from the liability established by the prior suit, because § 113 had not been triggered for those separate costs and a contribution action was therefore unavailable. 602 F.3d 204, 225 (3d Cir. 2010). One of the plaintiffs in *Agere*, TI Automotive Systems LLC (TI), had paid into a trust fund with other potentially responsible parties to cover a certain set of expenses at a site (the "Operational Unit One" expenses), even though TI had not been sued for those expenses. *Id.* at 212. TI had also previously been sued by the EPA in a cost recovery action under § 107 for a different set of expenses (the "Operational Unit Two" expenses), resulting in a consent decree requiring TI to pay those separate expenses. *Id.* at 212–13. The Third Circuit held that TI was not required to use a contribution action for all of its claims, and could bring a § 107 cost recovery action to recover its share of the Operational Unit One expenses, even though TI had been sued by the EPA under § 107 for the Operational Unit Two expenses. *Id.* at 225–26. The Third Circuit also held that another plaintiff, Agere Systems, Inc. (Agere), could bring a cost recovery action because it had not been sued by the EPA for the expenses related to either Operational Unit. *Id.* The Third Circuit explained that "Agere and TI do not have § 113(f) contribution claims for the settlement sums because those parties were never themselves sued *for those amounts* by the EPA or by other PRPs." *Id.* at 225 (emphasis added).

*Bernstein*, *NCR*, and *Agere* each demonstrate that a party's right to contribution for some of its expenses at a site does not necessarily mean that the party loses its right to bring a cost recovery action for other expenses. Both *Bernstein* and *Agere* held that plaintiffs could bring cost recovery actions for expenses separate from those for which the plaintiffs had a right of contribution. And *NCR* held that the plaintiff was required to bring all of its claims in contribution because each set of expenses was covered by an order triggering the right to contribution.[7]

Considering the closely related issue of whether a party's right to contribution for some of its expenses triggers the statute of limitations for contribution for all of its other expenses, the First Circuit has held that the limitations periods for separate sets of expenses are triggered independently. *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 13–15 (1st Cir. 2004). In *American Cyanamid*, a hazardous waste site required both soil and groundwater remediation. *Id.* at 10–11. In previous litigation, a potentially responsible party called the Rohm & Haas Company (R&H) was held liable in a § 107 cost recovery action for expenses related to

---

[7] The Seventh Circuit's statement regarding the "slicing and dicing" of costs under the 2007 administrative order is consistent with our analysis. The statement refers to "slicing and dicing of costs *incurred under the same administrative order*," where NCR's "liability for *all of those costs* will ultimately be determined in the enforcement action." 768 F.3d at 692 (emphasis added). It is apparent that the Seventh Circuit did not find it generally problematic to consider different sets of expenses separately, because the court separately evaluated NCR's expenses under each of the three orders. Instead, the Seventh Circuit found it problematic to further divide NCR's expenses under the 2007 order, when NCR's liability for all of those expenses would be determined in the government's enforcement action.

the soil cleanup.  *Id.* at 10.  R&H also entered into a separate consent decree with the United States related to the groundwater cleanup.  *Id.* at 11.  R&H later brought a CERCLA contribution action against other potentially responsible parties for its groundwater cleanup expenses.  *Id.* The First Circuit upheld R&H's contribution action over the defendants' argument that the statute of limitations for contribution for the *groundwater* expenses had been triggered by R&H's earlier liability for the *soil* expenses.  *Id.* at 13. The First Circuit explained that CERCLA's statute of limitations for contribution claims bases the timeliness of an "action for contribution for any response costs or damages" on "the date of judgment in any action . . . for recovery of *such* costs or damages."  *Id.* (quoting 42 U.S.C. § 9613(g)(3)).  The First Circuit held that the phrase "'such costs or damages' refers to the costs or damages *contained in* the 'judgment.'"  *Id.* (emphasis added).  "[A] PRP has three years to seek contribution for costs contained within a judgment.  The statute of limitations, however, is not triggered for costs not contained within the judgment."  *Id.* at 15; *see also ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1215 (9th Cir. 2015) ("[T]here is no limit in the statute to prevent a party in an early settlement from seeking contribution related to a later settlement, as long as those settlements cover separate obligations."); *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 557 (6th Cir. 2007) ("Rather than focus on *who* settled the cost-recovery action, in short, the statute asks us to focus on *what* was settled."). Although these cases considered statute of limitations questions, their reasoning confirms that a party's right to contribution is limited to the expenses for which it has been found liable.

In this case, Whittaker was found liable to the *Castaic Lake* plaintiffs for the expenses specifically related to removing perchlorate from the plaintiffs' wells and replacing their water.  Whittaker now seeks reimbursement from the government for a different set of expenses, for which Whittaker was not found liable in *Castaic Lake*.[8]  Following the guidance of the Supreme Court and the other circuit courts, we hold that Whittaker was not required to bring its claims in this case in a § 113(f) contribution action after its liability was resolved in *Castaic Lake*.

C

The government presents two text-based arguments for why a party who has been sued in a § 107 cost recovery action for expenses related to pollution at a site should be limited to a contribution action for all of the party's expenses at the site, regardless of whether the expenses are covered by the liability established by the prior § 107 suit.  We find neither argument persuasive.

First, noting that § 113(f)(1) allows a contribution action to be brought "during or following" a cost recovery action under § 107, *see* 42 U.S.C. § 9613(f)(1), the government argues that a party's right to contribution cannot be limited to the liability established by the § 107 cost recovery action. After all, it would not make sense to permit a party to recover contribution before its liability is established if the party's right to contribution is limited to its established liability. However, the Supreme Court has explained that:

---

[8] Nor is Whittaker's own liability for the expenses it seeks in this case pending in any other litigation, as far as we are aware.

The statute authorizes a PRP to seek contribution "during or following" a suit under . . . § 107(a). Thus, § 113(f)(1) permits suit before or after the establishment of common liability. In either case, a PRP's right to contribution under § 113(f)(1) is *contingent* upon an inequitable distribution of common liability among liable parties.

By contrast, § 107(a) permits recovery of cleanup costs but does not create a right to contribution. A private party may recover under § 107(a) *without any establishment of liability* to a third party.

*Atl. Research*, 551 U.S. at 138–39 (emphasis added; citation omitted). While the statute permits a party to initiate a contribution action while a § 107 cost recovery suit is pending, actual recovery of contribution under § 113(f)(1) is limited to the expenses for which the party is found liable.[9] *See Bernstein*, 733 F.3d at 207 ("To the extent that the Trustees' suit seeks to recover expenses arising out of their performance of the 2002 [consent decree], it is not a contribution action."); *United States v. Davis*, 261 F.3d 1, 46 (1st Cir. 2001) ("This [statutory] language anticipates that a defendant in a § [107] cost recovery action may initiate a contribution action before its own liability is established. Consistent with this scheme, a § [107] defendant whose liability has been established may be awarded declaratory

---

[9] A party may also be able to obtain a declaratory judgment in a contribution action, in order to assign proportionate liability for any uncertain future expenses. *See Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1191–92 (9th Cir. 2000).

relief before that liability has been fully discharged."). This is how contribution claims traditionally work. *See* Restatement (Third) of Torts § 23(b) & cmt. b.**[10]** For this reason, it was not the terms of the *Castaic Lake* complaint that determined Whittaker's right to recover contribution, but rather the extent of the costs for which Whittaker was held liable in that case.

Second, noting that § 113(f)(1) allows a contribution action to be brought against "any other person who is liable or potentially liable" under § 107, *see* 42 U.S.C. § 9613(f)(1), the government argues that, once a contribution claim has been triggered, the scope of expenses recoverable in contribution is coextensive with the scope of potential liability under § 107, including "any . . . necessary costs of response incurred" by a party, *see id.* § 9607(a)(4)(B). If the right to contribution were so broad, there would be no reason for courts to evaluate different sets of expenses separately in deciding whether a party has a contribution claim, yet evaluating expenses separately is precisely what courts have done. *See, e.g.*, *NCR*, 768 F.3d at 690–92; *Bernstein*,

---

**[10]** As explained in the comment:

> A person seeking contribution must extinguish the liability of the person against whom contribution is sought for that portion of liability, either by settlement with the plaintiff or by satisfaction of judgment. As permitted by procedural rules, a person seeking contribution may assert a *claim* for contribution and obtain a contingent judgment in an action in which the person seeking contribution is sued by the plaintiff, even though the liability of the person against whom contribution is sought has not yet been extinguished.

Restatement (Third) of Torts § 23 cmt. b (citations omitted).

733 F.3d at 207–08; *Agere Sys.*, 602 F.3d at 225–26; *Am. Cyanamid*, 381 F.3d at 14–16. Section 113(f)(1)'s reference to § 107's potentially responsible parties indicates from whom contribution may be sought, not the scope of expenses that are recoverable in contribution.

### D

Finally, our holding is consistent with CERCLA's purposes. As noted above, CERCLA was intended to incentivize both environmental cleanup efforts and negotiated settlements of liability. *Chubb Custom*, 710 F.3d at 956. Allowing a party who has incurred substantial environmental response costs over a span of decades to recover from other potentially responsible parties serves these dual goals. *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 948 (9th Cir. 2002) ("Potential purchasers of abandoned or underutilized contaminated properties are often deterred from purchasing and cleaning up these properties by exposure to unbounded and uncertain liability."); *Bernstein*, 733 F.3d at 214 ("[T]he cost recovery action is subject to a longer statute of limitations, making it arguably the preferable recovery vehicle for a PRP embarking on what might well be a decade-long cleanup effort, and thus actually creating a further positive incentive to settle.").

We recognize that CERCLA's goal of encouraging prompt settlement may also be served by interpreting the right of contribution broadly, because the imposition of a shorter statute of limitations would incentivize parties to initiate lawsuits sooner. *See* 42 U.S.C. § 9613(g); *ASARCO*, 792 F.3d at 1211. Yet such a broad interpretation of "contribution" is inconsistent with the balance struck by Congress and with the Supreme Court's interpretation of the

term. We do not believe that Congress mandated parties who have been sued in § 107 cost recovery actions to bring all of their own CERCLA claims in the form of a contribution action, on an accelerated timeframe, regardless of the merit or the result of the § 107 cost recovery suit.

IV

Because Whittaker seeks to recover expenses that are separate from those for which Whittaker's liability is established or pending, Whittaker was not required to bring this suit as a claim for contribution. Whittaker therefore is not barred on this basis from bringing a cost recovery action against the United States.

**REVERSED and REMANDED**.

---

OWENS, Circuit Judge, concurring in all but Part III D:

The Court's opinion persuasively follows current Supreme Court and circuit law interpreting the relevant statutory provisions, so I concur. Yet I do not join Part III D, as the case law, in my view, has drifted from what Congress intended when it passed and amended CERCLA in the 1980s. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

Requiring all related contribution claims to be "dealt with in a single action" would "encourage private party settlements and cleanup" because the threat of being sued "as a third-party defendant, concurrent with the original litigation, has the effect of bringing all such responsible parties to the

bargaining table at an early date." H.R. Rep. No. 99-253, pt. 1, at 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862. Rather than dining at the same table for one big CERCLA feast, our holding—dictated in my view by language in *Atlantic Research*—permits adversaries to fight for generations over moldy leftover crumbs. Good for lawyers, but bad for the environment and the communities affected by the contamination.

I urge Congress to take a second look at this aspect of CERCLA.