**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASARCO LLC, a Delaware corporation, | No. 14-35723 |
| *Plaintiff-Appellant*, | D.C. No. 6:12-cv-00053-DLC |
| v. | |
| ATLANTIC RICHFIELD COMPANY, a Delaware corporation, | OPINION |
| *Defendant-Appellee.* | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted February 8, 2017
Seattle, Washington

Filed August 10, 2017

Before: Raymond C. Fisher, Richard A. Paez,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

# SUMMARY[*]

### Environmental Law

The panel vacated the district court's summary judgment in favor of the defendant in a contribution action under § 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act.

CERCLA § 113(f) provides that after a party has, pursuant to a settlement agreement, resolved its liability for a "response" action or the costs of such an action, that party may seek contribution from any person who is not a party to the settlement.

The panel held that a 1998 settlement agreement under the Resource Conservation and Recovery Act between the plaintiff and the United States did not trigger the three-year statute of limitations for the plaintiff to bring a CERCLA contribution action concerning the East Helena Superfund Site. Agreeing with the Third Circuit, and disagreeing with the Second Circuit, the panel held that a settlement agreement entered into under an authority other than CERCLA may give rise to a CERCLA contribution action. In addition, a "corrective measure" under RCRA qualifies as a "response" action under CERCLA. The plaintiff did not, however, "resolve its liability" under the 1998 RCRA settlement agreement.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Nonetheless, a later, 2009 agreement, on which the plaintiff based its present CERCLA contribution action, did resolve the plaintiff's liability. Because the plaintiff filed the present action within the three-year limitations period measured against entry of the 2009 agreement, it was timely. The panel remanded the case for further proceedings to determine whether the plaintiff was entitled to contribution for the response costs it incurred under the 2009 agreement.

## COUNSEL

Gregory Evans (argued), Laura G. Brys, and Daphne Hsu, McGuire Woods LLP, Los Angeles, California; Linda R. Larson, Marten Law PLLC, Seattle, Washington; for Plaintiff-Appellant.

Shannon Wells Stevenson (argued), William J. Duffy, and Mave A. Gasaway, Davis Graham & Stubbs LLP, Denver, Colorado; Elizabeth H. Temkin, Temkin Wielga & Hardt LLP, Denver, Colorado; Randy J. Cox and Randy J. Tanner, Boone Karlberg P.C., Missoula, Montana; for Defendant-Appellee.

## OPINION

CALLAHAN, Circuit Judge:

Section 113(f)(3)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") allows persons who have taken actions to clean up hazardous waste sites to seek monetary contribution from other parties who are also responsible for the contamination. 42 U.S.C. § 9613(f)(3)(B). The

provision provides that a person that has "resolved its liability" for "some or all of a response action or for some or all of the costs of such action" pursuant to a settlement agreement with the government "may seek contribution from any person who is not party to a settlement." *Id.* In other words, "a [potentially responsible party] that pays money to satisfy a settlement agreement . . . may pursue § 113(f) contribution." *United States v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007). CERCLA imposes a three-year statute of limitations after entry of a judicially approved settlement, during which a party may bring a contribution action. 42 U.S.C. § 9613(g)(3).

This case presents three issues of first impression in our circuit. First, we must decide whether a settlement agreement entered into under an authority other than CERCLA may give rise to a CERCLA contribution action. Second, we must decide whether a "corrective measure" under a different environmental statute, the Resource Conservation and Recovery Act ("RCRA"), qualifies as a "response" action under CERCLA. And third, we must decide what it means for a party to "resolve[] its liability" in a settlement agreement—a prerequisite to bringing a § 113(f)(3)(B) contribution action. Our answers to these legal questions guide our inquiry into whether a 1998 settlement agreement under RCRA (the "1998 RCRA Decree") between Appellant Asarco LLC ("Asarco") and the United States, which was approved and entered by a federal district court, triggered the three-year statute of limitations for Asarco to bring a § 113(f)(3)(B) contribution action.

In this contribution action against Appellee Atlantic Richfield Company ("Atlantic Richfield"), the district court answered the first two questions in the affirmative but did not address the third. On Atlantic Richfield's motion for

summary judgment, the district court concluded that Asarco's action accrued with entry of the 1998 RCRA Decree. Because Asarco brought its action in 2012—well beyond the three-year statute of limitations under CERCLA—the district court determined that its claim was time-barred.

We agree with the district court on the first two issues but, as to the third, conclude that Asarco did not "resolve[] its liability" under the 1998 RCRA Decree. Asarco therefore could not have brought its contribution action in 1998, and the statute of limitations did not begin to run with entry of the 1998 RCRA Decree. By contrast, a later, 2009 agreement, on which Asarco bases its present contribution action, did resolve Asarco's liability. And because Asarco filed that action within the three-year limitations period measured against entry of the 2009 agreement, it is also timely. The district court therefore erred in dismissing Asarco's action on statute of limitations grounds. Accordingly, we vacate the district court's judgment and remand for further proceedings to determine whether Asarco is entitled to contribution for the response costs it incurred under the 2009 agreement.

## I. Factual Background

The East Helena Superfund Site (the "Site") is located in and around an industrial area in Lewis and Clark County, Montana. The Site includes the City of East Helena, Asarco's former lead smelter, and a nearby zinc fuming plant that was operated by Atlantic Richfield's predecessor, Anaconda Mining Company ("Anaconda"), and later by Asarco.

The Site has been a locus of industrial production for more than a century, resulting in decades of hazardous waste

releases. The lead smelter, which Asarco operated from 1888 until 2001, discharged toxic compounds into the air, soil, and water, such as lead, arsenic, and other heavy metals. Asarco alleges that the zinc fuming plant, which Anaconda operated from 1927 to 1972, also contributed to the contamination. Asarco purchased the zinc fuming plant in 1972 and apparently ceased operations in 1982.[1] In 1984, the United States Environmental Protection Agency ("EPA") added the Site to the National Priorities List under CERCLA.

In the late 1980s, EPA identified Asarco and Anaconda as potentially responsible parties ("PRPs") under CERCLA, meaning—in CERCLA vernacular—that they bore at least some responsibility for the contamination. *See* 42 U.S.C. § 9607(a). EPA sought remedial action only from Asarco, which resulted in three CERCLA settlements between Asarco and the United States in the late 1980s and early 1990s. Those early settlements are not at issue in this litigation.

In 1998, the United States brought claims against Asarco for civil penalties and injunctive relief under RCRA and the Clean Water Act ("CWA"). The complaint alleged that Asarco had illegally disposed of hazardous waste at the Site, and sought an order requiring Asarco to, *inter alia*, "conduct corrective action pursuant to Section 3008(h) of RCRA, 42 U.S.C. § 6928(h) . . . ." A "corrective action" under RCRA is a type of "response measure" necessary to protect human health or the environment, *see* 42 U.S.C. § 6928(h),

---

[1] It is unclear whether the plant remains active. Asarco and Atlantic Richfield both contend that the plant ceased operations in 1982, but the parties rely on authority from 1997, which states that "Asarco continues to operate the zinc fuming plant."

and is "designed to clean up contamination," J. Stanton Curry, James J. Hamula, Todd W. Rallison, *The Tug-of-War Between RCRA and CERCLA at Contaminated Hazardous Waste Facilities*, 23 Ariz. St. L.J. 359, 369 (1991).

Asarco settled the case with the United States. The settlement agreement was approved by the federal district court in Montana, and entered on the court's docket as a consent decree. The 1998 RCRA Decree assessed civil penalties against Asarco and also required Asarco to take certain remedial actions to address past violations. Those actions included "[c]orrective [m]easures" to, *inter alia*, "remediate, control, prevent, or mitigate the release, potential release or movement of hazardous waste or hazardous constituents into the environment or within or from one media to another."

Despite the 1998 RCRA Decree's lofty goals, Asarco failed to meet its cleanup obligations. Further complicating matters, in 2005 Asarco filed for Chapter 11 bankruptcy protection. The United States and Montana filed proofs of claim in the bankruptcy proceeding asserting joint and several liability claims under CERCLA. On June 5, 2009, the bankruptcy court entered a consent decree under CERCLA (the "CERCLA Decree") between Asarco, the United States, and Montana. The CERCLA Decree established a custodial trust for the Site, and turned over cleanup responsibility to a trustee. As part of the agreement, Asarco paid $99.294 million (plus other expenses), which, *inter alia*, "fully resolved and satisfied" its obligations under the 1998 RCRA Decree.[2]

---

[2] Asarco also paid $5 million to Montana to settle a claim for natural resource damages.

## II. Procedural Background

On June 5, 2012, Asarco brought an action against Atlantic Richfield under CERCLA § 113(f)(3)(B), seeking contribution for its financial liability under the CERCLA Decree. Atlantic Richfield filed a motion for summary judgment, arguing that Asarco's action was untimely because the three-year statute of limitations under § 113 began running with the 1998 RCRA Decree. Asarco countered that "RCRA, a statute that does not authorize contribution claims, [cannot] trigger the limitations period under another law, CERCLA." Asarco also argued that the CERCLA Decree created "new" and "different" work obligations from the 1998 RCRA Decree, thereby triggering a new statute of limitations period for at least the costs associated with those new obligations.

The district court granted summary judgment for Atlantic Richfield and dismissed the case. It concluded that the plain language of CERCLA § 113(f)(3)(B) requires only that a settlement agreement address a "response action," not that it be entered into under CERCLA. The court also determined that Asarco had incurred response costs under the 1998 RCRA Decree, and therefore held that the 1998 RCRA Decree provided the necessary predicate for a CERCLA contribution action. Finally, the court rejected Asarco's argument that the CERCLA Decree contained matters not addressed by the 1998 RCRA Decree. Accordingly, it held that the CERCLA Decree did not reset the statute of limitations for any response costs incurred under that agreement, and deemed Asarco's claim for contribution untimely. Asarco appealed.

### III. Statutory Context

Congress enacted CERCLA in 1980 with two goals in mind: (i) to encourage the "'expeditious and efficient cleanup of hazardous waste sites,'" and (ii) to ensure that those responsible for hazardous waste contamination pay for the cleanup. *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 880 (9th Cir. 2001) (en banc) (quoting *Pritkin v. Dep't of Energy*, 254 F.3d 791, 795 (9th Cir. 2001)); *see* S. Rep. No. 96–848, at 13 (1980). Hazardous waste sites—also known as Superfund sites—contain toxic substances often deposited by multiple entities. *See* 42 U.S.C. § 9607(a)(1)–(4). In order to spread responsibility among those entities, Congress included a provision in CERCLA providing for reimbursement of costs incurred by the government or a liable PRP. Section 107(a) provides a cause of action for a "cost recovery" claim against PRPs for a wide range of expenses, including "'any . . . necessary costs of response incurred'" that result from a release of a hazardous substance. *Whittaker Corp. v. United States*, 825 F.3d 1002, 1006 (9th Cir. 2016) (quoting 42 U.S.C. § 9607(a)).

"Response" is a term of art under CERCLA and means "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). Congress even gave those defining terms their own definitions. A "removal" means, *inter alia*, "the cleanup or removal of released[3] hazardous substances from the environment" and any actions that may be necessary "in the event of the threat of release of hazardous substances into

---

[3] With exceptions, a "release" under CERCLA means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) . . . ." 42 U.S.C. § 9601(22).

the environment." *Id.* § 9601(23). A "remedial action" means, *inter alia*, "actions consistent with permanent remedy taken instead of or in addition to removal actions . . . to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* § 9601(24). Put simply, a "response action" covers a broad array of cleanup activities.

Section 107(a) is limited to recovery of response costs the suing PRP itself directly incurred. *See Atl. Research*, 551 U.S. at 139 ("[Section] 107(a) permits recovery of cleanup costs but does not create a right to contribution."). At the time of enactment, CERCLA included no express right to contribution for a PRP that did not itself incur response costs, but that reimbursed another party that did incur response costs. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 162 (2004). Such a situation arises under two circumstances: (i) where the PRP is the defendant in a CERCLA § 106 or § 107(a) action and a money judgment issues against it; or, as with the CERCLA Decree in the matter before us, (ii) where the PRP pays the United States' or a State's response costs pursuant to a settlement agreement. *See id.* at 160–61; *Atl. Research*, 551 U.S. at 138–39; *Whittaker*, 825 F.3d at 1006–07.

Congress added an express right to contribution with the Superfund Amendments and Reauthorization Act of 1986 ("1986 CERCLA Amendments"), Pub. L. No. 99–499, to address these two circumstances. *See Atl. Research*, 551 U.S. at 132. Section 113(f)(1) captures the first, and provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)] of this title, during or following any civil action . . . under [§ 106 or § 107(a)] of this title." 42 U.S.C.

§ 9613(f)(1). Section 113(f)(1) is not at issue in the instant matter, but, as discussed *infra* in Part IV.A, it is relevant to resolving the first issue we must decide: whether the 1998 RCRA Decree may give rise to a CERCLA contribution action. Section 113(f)(3)(B), which is directly at issue, captures the second scenario, and provides that

> [a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement [that immunizes such person from a contribution action].

*Id.* § 9613(f)(3)(B). In other words, "a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution." *Atl. Research*, 551 U.S. at 139; *see Cooper*, 543 U.S. at 163, 167 (recognizing that § 113(f)(1) and § 113(f)(3)(B) set forth separate rights of contribution).

While § 107(a) cost recovery actions and § 113(f) contribution actions offer "complementary yet distinct" remedies, there is overlap between them. *Atl. Research*, 551 U.S. at 138, 139 n.6. For example, a PRP may undertake its own response actions pursuant to a settlement agreement with the government. *See id.* That PRP will have incurred its own response costs, meaning it is eligible for cost recovery under § 107(a), but it has also settled with the government, giving rise to a contribution action under § 113(f)(3)(B). The question is whether both or only one of these avenues of relief is available. Our circuit, and "every federal court of appeals to have considered the question

since *Atlantic Research*," has concluded that "a party who *may* bring a contribution action for certain expenses *must* use the contribution action [under § 113(f)(3)(B)], even if a cost recovery action [under § 107(a)] would otherwise be available."  *Whittaker*, 825 F.3d at 1007 (emphasis in original); *see, e.g.*, *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013) (party may not pursue cost recovery claim where a contribution claim is available); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236–37 (11th Cir. 2012) (same); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603–04 (8th Cir. 2011) (same); *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 229 (3d Cir. 2010) (same); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 128 (2d Cir. 2010) (same); *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 458 (6th Cir. 2007) (same).  Thus, a PRP that incurs its own response costs pursuant to a settlement agreement may only bring a claim for contribution.

Sections 107(a) and 113(f) have different statutes of limitations periods.  An action for "recovery of . . . costs" under § 107(a) "must be commenced . . . within 6 years after initiation of physical on-site construction of the remedial action" or "within 3 years after the completion of the removal action."  42 U.S.C. § 9613(g)(2)(A), (B).  An action for contribution of "response costs or damages" under § 113(f), by contrast, "may be commenced" no more than "3 years after . . . the date of . . . entry of a judicially approved settlement with respect to such costs or damages."  *Id.* § 9613(g)(3)(B).[4]  The shorter three-year limitations period

---

[4] When comparing the limitations periods for §§ 107(a) and 113(f), courts generally interpret the limitations period for § 107(a) recovery actions to be a uniform six years, not six years *or* three years.  *See, e.g.*,

for contribution actions is intended "to ensure that the responsible parties get to the bargaining—and clean-up—table sooner rather than later." *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 559 (6th Cir. 2007); *see Whittaker*, 825 F.3d at 1013 (Owens, J., concurring in part) (observing that § 113(f) was intended to "'bring[] all such responsible parties to the bargaining table at an early date'" (quoting H.R. Rep. (Energy and Commerce Committee) No. 99–253, pt. 1, at 80 (1985),[5] *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862)).

## IV. Discussion

Asarco's action is untimely if it could have brought a contribution action after judicial approval and entry of the 1998 RCRA Decree.  Such would be the case if three

---

*Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 1006 (6th Cir. 2015); *Consol. Edison Co. v. UGI Utils.*, 423 F.3d 90, 98 (2d Cir. 2005).

[5] With a wary eye trained on the potential pitfalls of gleaning congressional intent from legislative history, we note that the version of the bill to which H.R. Rep. No. 99–253 refers, H.R. 2817, included a contribution provision substantially similar to the final version included in the enacted statute.  That bill, which was introduced in the House of Representatives on June 20, 1985, and which remained the same in relevant part when reported out of the House Committee on Energy and Commerce, contained a contribution provision stating in part:

> Nothing in this subsection shall affect or modify in any way the rights of . . . any person that has resolved its liability to the United States or a State in a good-faith settlement, to seek contribution or indemnification against any persons who are not party to a settlement [with the United States or a State in a judicially approved good-faith settlement].

H.R. 2817, 99th Cong. § 113 (June 20, 1985).

conditions are met: (i) a non-CERCLA authority may give rise to a CERCLA contribution action, (ii) Asarco took a response action or incurred response costs under the 1998 RCRA Decree, and (iii) the 1998 RCRA Decree resolved Asarco's liability for at least some of those response actions or costs. The district court analyzed the first two conditions but not the third. We evaluate all three issues.

Our review of the district court's grant of summary judgment is de novo, as is our review of the court's determination that Asarco's contribution claim under the CERCLA Decree is barred by the statute of limitations. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Our review of the district court's interpretation of the RCRA and CERCLA Decrees is also de novo, except that we defer to any factual findings unless they are clearly erroneous. *City of Emeryville v. Robinson*, 621 F.3d 1251, 1261 (9th Cir. 2010).

## A. A Non-CERLCA Settlement Agreement May Form the Basis for a CERCLA Contribution Action

### 1.

We begin by considering whether § 113(f)(3)(B) applies to non-CERCLA settlement agreements. "As in any case of statutory construction our analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal quotation marks omitted). But it does not end there. We must heed the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks omitted). "A statutory provision that may seem ambiguous in isolation is often clarified by the remainder of

the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2442 (2014) (alteration in original and internal quotation marks omitted).

The plain text of § 113(f)(3)(B) is unilluminating. A "response" action is a defined term under CERCLA, but it is unclear from the text of § 113(f)(3)(B) whether it is a CERCLA-exclusive term. *See* 42 U.S.C. § 9601(25). In the same vein, § 113(f)(3)(B) requires a PRP to enter into a settlement agreement that is "administrative[ly] or judicially approved," but the text says nothing about whether the agreement must settle CERCLA claims in particular. *See id.* § 9613(f)(3)(B).

Expanding our analysis to the broader context of the statute, we consider § 113(f)(3)(B)'s companion provision, § 113(f)(1). That section expressly requires a CERCLA predicate by providing that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)] of this title, during or following any *civil action under [§ 106] of this title or under [§ 107(a)] of this title*." *Id.* § 9613(f)(1) (emphasis added). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted). Applying this principle here, Congress' express requirement of a CERCLA predicate in § 113(f)(1) and its absence in § 113(f)(3)(B) is strong evidence that Congress intended no such predicate in the latter provision.

Our understanding of § 113(f)(3)(B) is consistent with CERCLA's broad remedial purpose. "In ascertaining the

meaning of an ambiguous [statutory] term, we may use canons of statutory construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Probert v. Family Centered Servs. of Alaska, Inc*., 651 F.3d 1007, 1011 (9th Cir. 2011) (internal quotation marks omitted).  With the 1986 CERCLA Amendments, Congress sought to get parties to the negotiating table early to allocate responsibility for cleaning up contaminated sites.  H.R. Rep. No. 99–253, pt. 1, at 80.  Granting a settling party a right to contribution from non-settling PRPs provides a strong incentive to settle and initiate cleanup.  Congress gave no indication that it matters whether the authority governing the settlement is CERCLA or something else.  Its focus was, instead, on cleaning up hazardous waste sites.    An interpretation that limits the contribution right under § 113(f)(3)(B) to CERCLA settlements would undercut private parties' incentive to settle (except, of course, where the agreement was entered into under CERCLA), thereby thwarting Congress' objective and doing so without reaping any perceptible benefit.

Our interpretation also aligns with EPA's own view.  In *Niagara Mohawk Power Corp. v. Chevron, U.S.A., Inc.*, 596 F.3d 112 (2d Cir. 2010), EPA argued that "'settlement of federal and state law claims other than those provided by CERCLA fits within § 113(f)(3)(B) as long as the settlement involves a cleanup activity that qualifies as a "response action" within the meaning of CERCLA § 101(25), 42 U.S.C. § 9601(25).'"  *Id.* at 126 n.15 (quoting Brief for the United States as Amicus Curiae Supporting Appellant at 15).  "[EPA's] views, as expressed in [its *amicus*] brief, are persuasive because [its] reasoning is consistent with the statutory language," statutory context, and CERCLA's overall structure and purpose.  *See Van Asdale v. Int'l Game Tech*., 763 F.3d 1089, 1093 (9th Cir. 2014) (deferring to the

Secretary of Labor's *amicus* brief). Its interpretation therefore merits some deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (deference to an agency's interpretation depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all [other] factors which give it power to persuade"); *see also Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 401–02 (2008) (according an agency's non-binding interpretation *Skidmore* deference where the interpretation was "consistent with the statutory framework" and the statute was susceptible to "[n]o clearer alternatives").

**2.**

Whether a non-CERLCA settlement agreement may give rise to a contribution action has split the circuits. In *Trinity Industries, Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131 (3d Cir. 2013), the Third Circuit arrived at the conclusion we adopt here in evaluating a settlement agreement entered into under state law, reasoning that "Section 113(f)(3)(B) does not state that the 'response action' in question must have been initiated pursuant to CERCLA." *Id.* at 136. *Trinity* relied on that court's prior holding in *United States v. Rohm & Haas Co.*, 2 F.3d 1265 (3d Cir. 1993), *overruled on other grounds by United States v. E.I. Dupont De Nemours & Co.*, 432 F.3d 161 (3d Cir. 2005) (en banc), where it held that CERCLA § 107(a)—which provides a cause of action for recovery of response costs—was available "even when the waste removal [wa]s not undertaken pursuant to CERCLA." *Trinity*, 735 F.3d at 136. In *Rohm & Haas*, as in the matter before us, the remedial action was taken under RCRA. 2 F.3d at 1267. The court in *Rohm & Haas* noted that § 107(a) lacks any "CERCLA-specific requirement," and concluded that

> given the similarity of the provisions of
> RCRA and CERCLA authorizing EPA to
> order private parties to conduct corrective
> activity, we fail to perceive any reason why
> Congress might have wished to make
> government oversight expenses recoverable
> if the government invoked CERCLA
> statutory authority, but not if it invoked
> RCRA.

*Id.* at 1275.

The Second Circuit has gone the other way.  In *Consolidated Edison Co. of N.Y., Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 95 (2d Cir. 2005), the court held that § 113(f)(3)(B) creates a "contribution right only when liability for CERCLA claims . . . is resolved."  That case, like *Trinity*, involved a party's § 113(f)(3)(B) contribution action to recoup costs spent pursuant to a settlement agreement under state law.  *Id.* at 96.  But unlike *Trinity*, the Second Circuit read the term "response action" to be a "*CERCLA*-specific term," and relied on a House of Representatives Committee report for the 1986 CERCLA Amendments creating § 113.  *Id.* at 95–96.  That report states that § 113 "'clarifies and confirms the right of a person held jointly and severally liable *under CERCLA* to seek contribution from other potentially liable parties.'"  *Id.* (quoting H.R. Rep. No. 99–253, pt. 1, at 79) (emphasis in opinion).[6]

---

[6] Several district courts—including one in the Ninth Circuit—have agreed with the Second Circuit's approach. *See, e.g.*, *Differential Dev.-1994, Ltd. v. Harkrider Distrib. Co.*, 470 F. Supp. 2d 727, 739–43 (S.D. Tex. 2007); *ASARCO, Inc. v. Union Pac. R.R. Co.*, No. CV 04-2144-

The Second Circuit's approach is not persuasive and may be shifting.  First, the court misreads the pertinent legislative history.  *Consolidated Edison* relied on a portion of the House report that is specific to § 113(f)(1) for the proposition that Congress intended to require a CERCLA predicate under § 113(f)(3)(B).  *See* 423 F.3d at 96; H.R. Rep. No. 99–253, pt. 1, at 79.  But, as previously noted, those two provisions diverge in a crucial way:  § 113(f)(1) expressly requires that a party first be sued *under CERCLA* before bringing a contribution action, whereas § 113(f)(3)(B) makes no reference to CERCLA *at all*. Second, in a subsequent case, *Niagara Mohawk*, the Second Circuit indicated agreement with EPA's position that a CERCLA-specific settlement agreement is not necessary to maintain a § 113(f)(3)(B) contribution action.  596 F.3d at 126 n.15.  While the court addressed a distinct issue, and so did not have an opportunity to revisit its holding in *Consolidated Edison*, it commented that EPA "understandably takes issue with our holding in *Consolidated Edison*."  *Id.*

We agree with the Third Circuit.  Consideration of CERCLA's statutory context, structure, and broad remedial purpose, combined with EPA's reasonable interpretation, lead us to the inexorable conclusion that Congress did not intend to limit § 113(f)(3)(B) to response actions and costs incurred under CERCLA settlements.  We therefore hold that a non-CERLCA settlement agreement may form the necessary predicate for a § 113(f)(3)(B) contribution action.

---

PHX-SRB, 2006 WL 173662, at *7–9 (D. Ariz. Jan. 24, 2006); *City of Waukesha v. Viacom Int'l Inc.*, 404 F. Supp. 2d 1112, 1115 (E.D. Wis. 2005).

We turn next to considering whether the 1998 RCRA Decree is such an agreement.

## B. The 1998 RCRA Decree Required Asarco to Take "Response" Actions

The second condition necessary for the 1998 RCRA Decree to have triggered Asarco's ability to bring a § 113(f)(3)(B) contribution action is that the agreement required Asarco to take response actions or incur response costs. Asarco suggests that the 1998 RCRA Decree did not actually require any response actions, but was instead focused on assessing penalties for RCRA violations, such as noncompliance with RCRA's land disposal restrictions. Asarco argues that the agreement "at best" only resolved "Asarco's liability for civil penalties stemming from alleged operating violations." The district court barely acknowledged this issue.

Asarco dramatically understates the scope of its obligations under the Decree. The agreement clearly required Asarco to take response actions to clean up hazardous waste at the Site. Specifically, the 1998 RCRA Decree obligated Asarco to:

- Implement interim measures to "control or abate[] . . . imminent threats to human health and/or the environment";

- Prevent or minimize the spread of hazardous waste "while long-term corrective measure alternatives are being evaluated";

- Remove and dispose of contaminated soil and sediment at the Site; and, more generally, to

- Fulfill the Decree's "remedial objectives" and "remedial activities"—specifically by (i) implementing "corrective measures" to "reduce levels of hazardous waste or hazardous constituents to applicable standards"; (ii) remediating "any contamination in groundwater, surface water and soils, and the ore storage areas"; (iii) taking actions that "will result in the remediation of contaminated media"; and (iv) "provid[ing] the minimum level of exposure to contaminants and the maximum reduction in exposure."

The agreement's requirement that Asarco take various "corrective measures" is particularly noteworthy because RCRA expressly defines "corrective action" as a *type of* "response" action:  Under RCRA, EPA "may issue an order requiring corrective action or such *other response measure* as [it] deems necessary to protect human health or the environment."**[7]** 42 U.S.C. § 6928(h) (emphasis added).  In short, we hold that the 1998 RCRA Decree included response actions for purposes of bringing a CERCLA § 113(f)(3)(B) action.

## C. Asarco Did Not "Resolve Its Liability" Under the 1998 RCRA Decree

The third condition necessary for the 1998 RCRA Decree to have triggered Asarco's ability to bring a § 113(f)(3)(B) contribution action is that the agreement "resolved its liability to the United States or [Montana] for some or all of" its response action or the "costs of such

---

**[7]** We do not suggest that other authorities that lack the term "response" could not support a § 113(f)(3)(B) contribution action.

action" in the 1998 RCRA Decree.  *See* 42 U.S.C. § 9613(f)(3)(B).  Asarco argues that it did not, and therefore the statute of limitations to bring the instant action did not expire three years later, in 2001.

**1.**

Atlantic Richfield contends that Asarco waived this argument by not raising it in the district court, and that we should therefore not consider it.  Atlantic Richfield is correct that Asarco failed to raise this precise issue below.  Waiver, however, is not an absolute bar to our consideration of arguments on appeal.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).  We may reach an otherwise waived issue in three circumstances: (i) to prevent a miscarriage of justice or preserve the integrity of the judicial process, (ii) when a new issue arises on appeal because of a change in the law, and (iii) "'when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.'"  *Id.* (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)).

Determining whether Asarco "resolved its liability" under the 1998 RCRA Decree falls into the first and third categories.  If Asarco did not, as it contends, resolve its liability under the 1998 RCRA Decree, then justice would not be served by upholding the district court's decision.  The correct interpretation of the phrase "resolved its liability" is also a pure question of law.  While deciding whether Asarco "resolved its liability" requires application of the law to the particular terms of the 1998 RCRA Decree, those terms are not in dispute and the record requires no further development.  Moreover, deciding this issue will bring certainty to the state of the law in the Ninth Circuit and

thereby "'preserve the integrity of the judicial process.'" *Id.* We therefore proceed to the merits.

**2.**

As we did in Part IV.A, *supra*, we begin our analysis with the plain text of the statute. *Hughes*, 525 U.S. at 438. Where Congress has not defined specific statutory terms, we look to their ordinary meanings. *Carcieri v. Salazar*, 555 U.S. 379, 388 (2009). The commonly understood meaning of "resolve" is "to deal with successfully," "reach a firm decision about," or to "work out the resolution of" something. *Resolve*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/resolve (last accessed July 13, 2017). Black's Law Dictionary similarly defines the term to mean "to find an acceptable or even satisfactory way of dealing with (a problem or difficulty)." *Resolve*, Black's Law Dictionary 1504 (10th ed. 2014). Implicit in these definitions is an element of finality. If the parties reach a "firm decision about" liability, then the question of liability is not susceptible to further dispute or negotiation. As the Seventh Circuit explained in interpreting the same statutory provision, "[a]n issue which is 'resolved' is an issue which is decided, determined, or settled— finished, with no need to revisit." *Bernstein*, 733 F.3d at 211. "To meet the statutory trigger for a contribution action under § 9613(f)(3)(B), the nature, extent, or amount of a PRP's *liability* must be decided, determined, or settled, at least in part, by way of agreement with the EPA." *Id.* at 212 (emphasis in original).

But even if an agreement decides with finality the scope of a PRP's legal exposure and obligations, is its liability "resolved" where the government reserves certain rights, or where the party refuses to concede liability? For example, the statutory provision setting forth EPA's settlement

authority allows EPA to include a covenant not to sue in a settlement agreement. 42 U.S.C. § 9622(f). But such covenant must be conditioned on a PRP's completed performance. Section 122(f)(3) provides that

> [a] covenant not to sue concerning future liability to the United States shall not take effect until the President certifies that remedial action has been completed in accordance with the requirements of this chapter at the facility that is the subject of such covenant.

*Id.* § 9622(f)(3). EPA must therefore preserve its ability to bring an enforcement action even after the settlement agreement is executed. This requirement is reflected in EPA's model CERCLA consent decree, which provides that "covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree." *Superfund Program; Revised Model CERCLA RD/RA Consent Decree*, 60 Fed. Reg. 38,817, 38,833 (July 28, 1995). Similarly, EPA has, in the past, included in settlement agreements releases from liability that are conditioned on a PRP's completed performance. *See, e.g.*, *Bernstein*, 733 F.3d at 212–13; *Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 1004 (6th Cir. 2015); *RSR*, 496 F.3d at 558. Furthermore, parties often expressly refuse to concede liability under a settlement agreement, even while assuming obligations consistent with a finding of liability.

The Sixth and Seventh Circuits have decided that these reservations of rights tip the scales against a finding that a party has resolved its liability. In *Bernstein*, the Seventh Circuit held that settling PRPs had not resolved their liability

where (i) the agreement expressly stated that the PRPs had not conceded liability; (ii) EPA reserved its right to "seek legal [] or equitable relief to enforce the terms of the [agreement]"; and (iii) EPA only "*conditionally* promised to release the [PRPs] from liability" upon the PRPs' "complete performance, as well as certification thereof." 733 F.3d at 212–13 (emphasis in original). In rejecting the PRPs' argument that the agreement's covenant not to sue amounted to the requisite resolution, the court reasoned that because the release from liability was conditioned on completed performance, the covenant could only take effect when "performance was complete." *Id.* at 212.

The Sixth Circuit conducted a similar analysis in *ITT Industries*. 506 F.3d 452. The court found no resolution of liability where (i) EPA reserved its right to bring legal action for failure to comply with the agreement or for past, present, or future response costs; and (ii) the agreement expressly stated that the PRP did not concede liability. *Id.* at 459–60. And more recently, in *Florida* Power, the Sixth Circuit found no resolution where (i) EPA reserved its right to bring a CERCLA enforcement action for violations of the agreement; (ii) the agreement expressly stated that the PRP "shall have resolved [its] liability to EPA" only "[f]ollowing satisfaction of the requirements of this Consent Order"; (iii) the agreement provided that "participation of [the PRP] in this Order shall not be considered an admission of liability"; and (iv) the agreement was not titled an "administrative settlement." 810 F.3d at 1004.

By comparison, in *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757 (6th Cir. 2014), the Sixth Circuit held that a PRP had resolved its liability where the agreement (i) stated that, "for purposes of Section 113(f)(3)(B) . . . [the PRPs] have, *as of the Effective*

*Date*, resolved their liability to the United States"; (ii) immunized the settling parties from contribution actions *as of the Effective Date*; (iii) included the title, "Administrative Settlement Agreement"; and (iv) contained a covenant prohibiting EPA from suing under CERCLA "[i]n consideration of the actions that will be performed and the payments that will be made by [the PRPs] under the terms of th[e] Settlement Agreement." *Id.* at 768–69 (emphasis added and omitted). Yet, as pointed out by the dissent in *Florida Power*, the agreement in *Hobart* also included a broad reservation of rights, specifying that "nothing herein shall prevent U.S. EPA . . . from taking other legal or equitable action as it deems appropriate or necessary." *Florida Power*, 810 F.3d at 1016 (Suhrheinrich, J., dissenting) (internal quotation marks omitted). Similar provisions precluded a finding that the parties had resolved their liability in *ITT* and *Florida Power*, thus creating what appears to be an inconsistent approach within the Sixth Circuit.

Further complicating the law in the Sixth Circuit is an earlier case, *RSR*, in which the court held that the PRP's promise of future performance "resolved [its] liability to the United States" because RSR "agree[d] to assume *all* liability (vis-à-vis the United States) for future remedial actions." 496 F.3d at 558 (emphasis in original). But, as noted again by the dissent in *Florida Power*, the agreement at issue in *RSR* also included a covenant not to sue *conditioned* on a Certification of Completion of Remediation Action issued by EPA. *Florida Power*, 810 F.3d at 1012 (Suhrheinrich, J., dissenting); *see id.* (contemplating that the covenant might "not take effect until the remedial action was complete"). The *RSR* court indicated that a promise of future performance in an agreement suffices to constitute resolution of liability. *See* 496 F.3d at 558.

We adopt a meaning of the phrase "resolved its liability" that falls somewhere in the middle of these various cases. We conclude that a settlement agreement must determine a PRP's compliance obligations with certainty and finality. *See Bernstein*, 733 F.3d at 211–12 ("An issue which is 'resolved' is an issue which is decided, determined, or settled—finished, with no need to revisit."); *see also Florida Power*, 810 F.3d at 1002–03. However, we disagree with the Sixth and Seventh Circuits' holdings in *Florida Power* and *Bernstein* that the government must divest itself of its ability to enforce an agreement's terms. If a covenant not to sue conditioned on completed performance negated resolution of liability, then it is unlikely that a settlement agreement could *ever* resolve a party's liability. That is because CERCLA prevents a covenant not to sue from "tak[ing] effect until the President certifies that remedial action has been completed . . . ." 42 U.S.C. § 9622(f)(3); *see* 60 Fed. Reg. at 38,833 (model consent decree, conditioning a covenant not to sue on completed performance).

Nor do we agree—as the court held in *Bernstein*—that a release from liability conditioned on completed performance defeats "resolution." An agreement may "resolve[]" a PRP's liability once and for all without hobbling the government's ability to enforce its terms if the PRP reneges. This reasoning applies equally to a covenant not to sue conditioned on completed performance.[8] It is also consistent

---

[8] *Bernstein* held that an agreement containing a covenant not to sue conditioned on completed performance could give rise to a § 113(f)(3)(B) contribution action *after* performance was completed. 733 F.3d at 204. The court reasoned that once the condition was satisfied, the PRP had resolved its liability. *Id.* But such an interpretation renders another part of § 113—the statute of limitations provision—anomalous. The statute of limitations provision requires a PRP to bring a contribution action "no more than 3 years after . . . *entry*

with the 1986 CERCLA Amendments.   A House of Representatives Committee report expresses Congress' intent to encourage settlements by creating a right to contribution.  H.R. Rep. 99–253, pt. 1, at 80.  That same report criticizes EPA's inclusion of releases from liability in settlement agreements.  *Id.* at 102–03 ("[T]he Committee specifically notes its disapproval of the releases granted in the settlements entered into in the *Seymore Recy[c]ling* case and the *Inmont* case and expects and intends that any compara[b]le releases that might be presented for court approval would be rejected as not in the public interest.").  Indeed, the report goes one step further, expressing an intent to "authorize[]" EPA "to include in an agreement . . . *any provisions allowing future enforcement action . . . that [EPA] determines are necessary and appropriate* to assure protection of public health, welfare, and the environment." *Id.* at 102 (emphasis added).  Having sung the praises of settlements providing for a right of contribution in one part of the report, it would make little sense for Congress to encourage EPA to craft settlements in a way that nullifies that right in another.

---

*of a judicially approved settlement* . . . ."  42 U.S.C. § 9613(g)(3)(B) (emphasis added).  Thus, under the Seventh Circuit's approach, a party's contribution action could accrue *after* the statute of limitations had already expired.  For example, if a settlement agreement included a covenant not to sue conditioned on completed performance, and the cleanup took four years, then—in the Seventh Circuit's view—the PRP would be precluded from ever bringing a contribution action, even though it (eventually) satisfied the requirements for doing so.  And this would necessarily be the case because, as discussed, CERLCA *requires* that a covenant not to sue be conditioned on completed performance.  *See* 42 U.S.C. § 9622(f)(3).  Where possible, we avoid construing statutes in a way that results in such internal inconsistencies.  *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991).

Moreover, unlike the court in *Florida Power*, we conclude that it matters not that a PRP refuses to concede liability in a settlement agreement. Congress' intent in enacting § 113(f)(3)(B) was to encourage prompt settlements that establish PRPs' cleanup obligations with certainty and finality. A PRP's refusal to concede liability does not frustrate this objective so long as the PRP commits to taking action. Indeed, requiring a PRP to concede liability may discourage PRPs from entering into settlements because doing so could open the PRP to additional legal exposure. *See* 42 U.S.C. § 9607(a) (setting forth obligations of *liable* PRPs).

In sum, an examination of § 113(f)(3)(B)'s plain language, with due consideration for CERCLA's structure and purpose, leads us to the conclusion that a PRP "resolve[s] its liability" to the government where a settlement agreement decides with certainty and finality a PRP's obligations for at least some of its response actions or costs as set forth in the agreement. A covenant not to sue or release from liability conditioned on completed performance does not undermine such a resolution, nor does a settling party's refusal to concede liability. Whether this test is met depends on a case-by-case analysis of a particular agreement's terms.

### 3.

Turning to the 1998 RCRA Decree, we conclude that it fails to resolve Asarco's liability for any of its response actions or costs. First, the Decree's release from liability covers none of the "corrective measures"—i.e., response actions—mandated by the agreement. Paragraph 209, under "Effect of Decree," states that

> ASARCO's payment of all civil penalties due, and ASARCO's commitments to pay all stipulated penalties due and owing under this Decree, and ASARCO's commitment to fully and successfully complete the *requirements of this Decree*, shall constitute full satisfaction of the claims *for civil penalties* for civil violations alleged in the complaint of the United States that occurred prior to the date of lodging of this Decree, except as provided in this Paragraph . . . . This release is conditioned upon the complete and satisfactory performance by ASARCO of its obligations under this Decree.

1998 RCRA Decree ¶ 209 (emphasis added). The release is expressly limited to liability with regards to the United States' claims for civil penalties. Yet the complaint that prompted the parties to reach the agreement specifically sought both civil penalties and injunctive relief—only the latter of which could "require ASARCO to conduct corrective action."

Second, the 1998 RCRA Decree is replete with references to Asarco's continued legal exposure. For example, in paragraph 122, under the header "Off-Site Access," the agreement states unequivocally that "[n]othing in this section shall be construed to limit or otherwise affect ASARCO's liability and obligation to perform corrective measures . . . ." Similarly, in setting forth a limited covenant not to sue, paragraph 214 states that the

> Decree shall not be construed as a covenant not to sue, release, waiver or limitation of any rights, remedies, powers and/or authorities,

> civil or criminal, which EPA has under
> RCRA, CERCLA, or any other statutory,
> regulatory, or common law authority, except
> as provided in Paragraph 209 above . . . .

Because paragraph 209 does not address—let alone resolve—the United States' claims for injunctive relief, the covenant not to sue does not restrict the United States' authority to bring an action under CERCLA §§ 106 or 107, which could result in additional response obligations. 42 U.S.C. §§ 9606, 9607.

Lest there be any doubt, the Decree makes the point at least three more times. Paragraph 216 states that "except as specifically provided in Paragraph 209," compliance with the Decree "shall be no defense to any action commenced" under federal or state law. 1998 RCRA Decree ¶ 216. And the next paragraph provides that

> [e]xcept as expressly provided herein,
> nothing in this Decree shall constitute or be
> construed as a release from any claim, cause
> of action or demand in law or equity, against
> any person, firm, partnership, or corporation
> for any liability it may have arising out of, or
> relating in any way to, the generation,
> storage, treatment, handling, transportation,
> release, management or disposal of any
> hazardous wastes . . . found at, on, or under,
> taken to or from, or migrating to, from or
> through the [lead smelter and contiguous
> areas].

*Id.* ¶ 217 (emphasis added). Finally, paragraph 137 states that Asarco's CERCLA liability for response costs would

not be released even if Asarco fully complied with the Decree:

> Notwithstanding compliance with the terms of this Decree, ASARCO is not released from liability, if any, for the costs of any response actions taken or authorized by EPA under any applicable statute, including CERCLA.

Simply put, the 1998 RCRA Decree did not just leave open *some* of the United States' enforcement options, it preserved all of them.  Because the Decree did not settle definitively *any* of Asarco's response obligations, it did not "resolve[] [Asarco's] liability."  *See* 42 U.S.C. § 9613(f)(3)(B).  Accordingly, Asarco could not have brought a contribution action pursuant to the 1998 RCRA Decree and the corresponding limitations period did not run with that agreement.[9]

---

[9] Asarco was not without recourse to seek reimbursement for costs incurred under the RCRA Decree.  As discussed in Part III, *supra*, where a § 113(f) contribution action is unavailable, a PRP may be able to bring a § 107 "cost recovery" action against other PRPs to recoup "any . . . necessary costs of response incurred" that result from a release of a hazardous substance.  42 U.S.C. § 9607(a); *see Bernstein*, 733 F.3d at 214.  Put another way, a PRP that has taken a response action but has not entered into a settlement agreement that resolves its liability has satisfied the criteria for bringing a § 107 action.  A § 107 action has at least three advantages and one disadvantage compared to a § 113(f)(3)(B) action: (i) § 107(a) comes with a longer statute of limitations period than § 113(f)(3)(B) (six years versus three), (ii) it provides the possibility of joint and several liability, and (iii) it comes with limited defenses—e.g., acts of God, acts of war, and third-party omissions.  *See Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614 (2009) (joint and several liability is available under § 107 unless the harms caused by multiple entities "are capable of apportionment"); *NCR Corp. v. George*

### D. Asarco "Resolved Its Liability" Under the 2009 CERCLA Decree

The district court held that Asarco's contribution claim for response costs incurred under the 2009 CERCLA Decree was time-barred based on the erroneous conclusion that Asarco could have brought its action under the 1998 RCRA Decree. Asarco argues the district court erred because it brought its action no more than three years after entry of the June 2009 CERCLA Decree, which it argues "resolved its liability" for the first time, and therefore its action is timely. We agree with Asarco.

Asarco has a timely contribution claim under the CERCLA Decree if three conditions are met. First, Asarco must have brought its action within three years after the date the settlement was judicially approved. 42 U.S.C. § 9613(g)(3)(B). Second, the CERCLA Decree must cover response actions or costs of response. *Id.* § 9613(f)(3)(B). And third, the CERCLA Decree must "resolve[]" Asarco's liability for at least some response actions or costs. *Id.*

*Statute of limitations.* Section 113(g)(3) requires a party seeking contribution to bring its action no more than "3 years after . . . the date of . . . entry of a judicially approved settlement." *Id.* § 9613(g)(3). The bankruptcy court approved and entered the CERCLA Decree on June 5, 2009. Asarco brought its contribution action on June 5, 2012. In its denial of Atlantic Richfield's motion to dismiss, the

---

*A. Whiting Paper Co.*, 768 F.3d 682, 690 (7th Cir. 2014) (discussing limited defenses under § 107); 42 U.S.C. § 9607(a)(4)(B) (listing defenses). On the other hand, a party that is ineligible to bring a § 113(f) contribution action—and therefore must resort to § 107(a)—does not enjoy protection from other PRPs' contribution actions. *See* 42 U.S.C. § 9613(f)(2).

district court held that Asarco's claim was timely. Dist. Ct. Dkt. 49, at 6–7. On appeal, Asarco reiterates that its action "was filed within three years of a settlement that did in fact resolve Asarco's liability at the Site." Conspicuously absent from Atlantic Richfield's brief is any contention that the district court erred on this issue. We therefore deem abandoned Atlantic Richfield's argument that Asarco's claim is time-barred as measured against the CERCLA Decree. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988) (issue abandoned where not raised on appeal).

Even if Atlantic Richfield did not abandon this claim, we would conclude Asarco's claim is timely. Under § 113(g)(3), the day of the event that triggers the period is excluded for purposes of computing the period's end date. *See Asarco*, *LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1007–08 (9th Cir. 2014). Therefore, the first day of the period would be June 6, 2009, and the last day for filing would be June 5, 2012. *See id.* at 1007. Asarco met this deadline.

*Response actions or costs.* The CERCLA Decree required Asarco to pay $99.294 million (plus other expenses) into a custodial trust account to clean up the East Helena Site. The account covers expenses for past and future response actions, including, *inter alia*, "remedial actions, removal actions, [and] corrective action" at the Site. The CERCLA Decree also settled all obligations under the 1998 RCRA Decree, which, as described in Part IV.B, *supra*, itself addressed response actions. It is therefore beyond cavil that the CERCLA Decree covers "response" actions or costs of response.

*Resolution of liability.* Asarco argues that the CERCLA Decree "unequivocally" resolved its liability for all of its

response costs at the Site.   Atlantic Richfield does not directly address this issue, but instead asserts that the CERCLA Decree did not "trigger a new limitations period for costs incurred under the 1998 [RCRA] Consent Decree" because the CERCLA Decree served only as a "funding mechanism" for Asarco's "preexisting commitments." Atlantic Richfield asserts that deeming Asarco's contribution claim timely would work an injustice by allowing Asarco to incur cleanup obligations, sit on its rights and do nothing for years, and then pursue a stale claim through bankruptcy by virtue of its own indolence.

We agree with Asarco and hold that the CERCLA Decree "resolved" its liability for all of its response costs at the Site.[10]  For example, the Decree sets forth a covenant not to sue that is immediately effective and covers all of Asarco's response obligations.  The covenant provides, in relevant part, that

---

[10] While the district court did not address whether the CERCLA Decree resolved Asarco's liability, we need not remand to the district court for consideration of this issue in the first instance.  Whether the CERCLA Decree resolved Asarco's liability is an "issue fairly included within the question presented," namely, whether the district court erred in holding that Asarco could not maintain a contribution action under the CERCLA Decree. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1293 n.3 (2017). It was also raised before the district court, *see* Asarco Opp. to Mot. for Summary Judgment, Dist. Ct. Dkt. 161, at 11 ("The CERCLA Decree resolved Asarco's CERCLA liability at East Helena for the first time."), requires no supplementation of the record, and is pressed by Asarco on appeal.  We therefore proceed to the merits and decide whether the CERCLA Decree resolved Asarco's liability. *See Lewis*, 137 S. Ct. at 1293 n.3.

upon the Effective Date and Debtors'[11] full funding of all Custodial Trust Accounts . . . the United States [and Montana] covenant[] not to sue or assert any civil claims or civil causes of action against [Asarco] . . . pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606, 9607(a), and RCRA, 42 U.S.C. § 6901, et seq., Sections 301(a), 309(b), and 311 of CWA, 33 U.S.C. §§ 1311(a), 1319(b), and 1321, or any similar state law, including any liabilities or obligations asserted in the United States' [and Montana's] Proofs of Claim with respect to the East Helena Site.

CERCLA Decree ¶¶ 28–29. Thus, so long as Asarco funds the Custodial Trust Accounts,[12] it is released from liability for all response obligations under prior settlements, including "corrective measures" under the RCRA Decree.

Other parts of the Decree are similarly all-encompassing. For example, the section setting forth reservations of rights by the government is, in pertinent part, limited to Asarco's "future acts." Under that provision, the United States and Montana "specifically reserve . . . liability for[, *inter alia*,] response costs [and] response actions . . . under CERCLA, RCRA, CWA, [the Montana Comprehensive Environmental Cleanup and Responsibility Act] or *any other law* for

---

[11] Asarco is a "debtor" under the agreement.

[12] Asarco asserts that it has funded the custodial trust account, and Atlantic Richfield's brief concedes the point. We assume that Asarco has complied with the CERCLA Decree's payment obligations with respect to the East Helena Site.

Debtors' . . . *future acts creating liability*" under those statutes "that occur after the Closing Date." CERCLA Decree ¶ 39 (emphasis added). The section expressly does *not* reserve any rights to hold Asarco liable under *any* legal authority with respect to then-existing contamination beyond its payment obligations under the agreement. *See id.*

The agreement also caps Asarco's "total financial obligations" for past contamination at the amount specified in the agreement. CERCLA Decree ¶ 8.h. While it leaves open the possibility that Asarco may owe certain additional costs, those costs do not include response costs. *Id.* In other words, Asarco's financial liability was "resolved"—i.e., determined with finality—under the agreement itself; the agreement did not expose Asarco to future liability for past hazardous waste releases.

The agreement also provides Asarco with protection against contribution actions by non-settling parties, as provided under CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2). CERCLA Decree ¶ 43. Contribution protection applies only to "[a] person who has *resolved its liability* . . . in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(2) (emphasis added). The agreement's incorporation of that provision is further evidence that Asarco "resolved its liability" under the agreement. *See Hobart*, 758 F.3d at 768–69 (incorporation of provision immunizing a settling PRP from contribution weighed in favor of finding that the agreement resolved its liability).

Finally, we consider Atlantic Richfield's concern that deeming Asarco's contribution claim timely would allow Asarco to benefit from its own alleged neglect under the RCRA Decree. We sympathize with Atlantic Richfield's position but cannot agree with its conclusion. Whether a

right of contribution is available does not depend on whose ox gets gored: the fact that Asarco and not some other party was liable under the RCRA Decree does not change the fact that that agreement did not give rise to a right of contribution, whereas the CERCLA Decree did.

In sum, the CERCLA Decree constitutes a "firm decision about" Asarco's liability that lends it the requisite degree of finality. *See Bernstein*, 733 F.3d at 211 n.12. We therefore hold that Asarco has a cognizable claim for contribution under CERCLA § 113(f)(3)(B) because it brought a timely action under an agreement that resolved its liability.[13]

## V. Conclusion

We hold that the 1998 RCRA Decree did not resolve Asarco's liability for at least some of its response obligations under that agreement. It therefore did not give rise to a right to contribution under CERCLA § 113(f)(3)(B). By contrast, the 2009 CERCLA Decree did resolve Asarco's liability, and Asarco has brought a timely action for contribution under that agreement. We therefore vacate the district court's grant of summary judgment and remand for further proceedings consistent with this opinion. On remand, the district court should determine whether Asarco is entitled to any financial contribution from Atlantic Richfield and, if so, how much.

---

[13] We express no opinion on the scope of contribution and protection rights where a settlement agreement, unlike this CERCLA Decree, resolves a PRP's liability only for *some* of its response obligations. *Cf. Whittaker*, 825 F.3d at 1008 (a party may not seek contribution for expenses that are not "at issue in the triggering . . . settlement").

Costs are awarded to the Appellant.

**VACATED and REMANDED.**